UNITED STATES COURT OF INTERNATIONAL TRADE

_____
:
DOOSAN FUEL CELL AMERICA, INC.,                :
                                               :
        Plaintiff,                             :
                                               :
        v.                                     :   Court No. 21-00057
                                               :
UNITED STATES OF AMERICA;                      :
U.S. CUSTOMS & BORDER PROTECTION;              :
TROY A. MILLER,                                :
PERFORMING THE DUTIES OF THE                   :
COMMISSIONER,                                  :
                                               :
        Defendants.                            :
_____:

# COMPLAINT

Doosan Fuel Cell America, Inc. ("DFCA"), by and through its undersigned attorneys, alleges and states as follows:

1. This action challenges the reclassification by U.S. Customs and Border Protection ("CBP") of an article imported by Plaintiff DFCA, the denial of DFCA's protest of that reclassification, and the related imposition of duties associated with the protested reclassification.

2. As discussed in this complaint, CBP failed to state a lawful basis for the reclassification, and failed to consider relevant factors when making its decision to deny DFCA's protest. As a result, CBP misclassified DFCA's subject imports and improperly denied the protest.

3. This action also challenges CBP's reclassification of the article and denial of the protest as an unlawful action modifying, revoking, or effectively modifying a prior CBP classification ruling obtained in 1990 establishing the proper Customs classification of the

imported article. The 1990 ruling classified the relevant article under Harmonized Tariff System ("HTS") heading 8405. In reliance on that ruling, the article was imported under that heading for nearly thirty years. Additionally, in reliance on CBP's ruling, DFCA declined over those years to claim the applicability of certain duty-free trade preference programs and agreements. Also in reliance on that ruling, DFCA classified many imported parts, components, and related articles under HTS codes related to the classification provided in the 1990 ruling.

4.      CBP's unlawful reclassification of the item failed to provide notice and opportunity for comment. Despite the absence of any change in the law of tariff classifications, CBP suddenly announced, in its Notice of Action issued January 9, 2020, that the imported article (and all future similar imports) would be classified under a new HTS classification, different from the classification specified in the 1990 ruling. The effect of that reclassification was to increase the applicable duty rate from zero to 3 percent.

5.      DFCA timely filed a protest of CBP's Notice of Action, which CBP unlawfully denied.

6.      The 2020 Notice of Action and CBP's subsequent denial of DFCA's protest were unlawful because CBP did not comply with the mandatory procedures set forth in the Customs Modernization Act of 1993 (the "Mod Act"). Specifically, 19 U.S.C. § 1625(c) requires CBP to publish in the Customs Bulletin a notice of any proposed interpretative ruling or decision that would modify or revoke a prior interpretative ruling that has been in effect for at least 60 days, or have the effect of modifying the treatment of import transactions. Interested parties must be given an opportunity to submit, during not less than the 30-day period after the date of such publication, comments on the correctness of the proposed ruling or decision. That notice requirement is designed to permit interested parties to comment before CBP makes its final

decision. The final ruling or decision shall not become effective until 60 days after the date of its publication. Here, CBP's 2020 Notice of Action revoked or modified the 1990 ruling and had the effect of modifying CBP's prior treatment of imports of the article. But in violation of the Mod Act, the Notice of Action and subsequent denial of DFCA's protest failed to provide the required notice and comment period, imposed a reclassification of the article effective immediately, and imposed a rate advance on the affected article on the date the notice was issued.

7. The Notice of Action and subsequent denial of DFCA's protest are also invalid under the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

8. Accordingly, and for the reasons set forth in greater detail below, the Court should set aside the Notice of Action (dated January 9, 2020) and CBP's denial of DFCA's protest of that action as unlawful and null and void, and should grant other relief as outlined in DFCA's Prayer for Relief below.

## JURISDICTION

9. The Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(a), which confers exclusive jurisdiction to the Court over "any civil action commenced to contest the denial of a protest, in whole or in part, under Section 515 of the Tariff Act of 1930."[1] The Court also has jurisdiction and under the Declaratory Judgment Act, 28 U.S.C. § 2201.

---

[1] DFCA filed its protest pursuant to Section 514 of the Tariff Act of 1930. Section 515 of the Tariff Act of 1930 (19 U.S.C. 1515) sets forth standards governing the administrative review of protests filed under Section 514.

**PARTIES**

10. Plaintiff DFCA is a Delaware corporation with its headquarters located at 101 East River Drive, East Hartford, CT 06108. DFCA is an importer of, *inter alia*, water gas generators.

11. Defendant United States of America is the statutory defendant under 28 U.S.C. § 1581(a).

12. CBP is an executive agency of the United States charged with facilitating legitimate trade and enforcing U.S. Customs laws and regulations.

13. Defendant Troy Miller is the Senior Official Performing the Duties of the Commissioner of CBP. In this capacity, he oversees CBP's collection of duties paid by Plaintiff.

**STANDING**

14. Plaintiff DFCA manufactures hydrogen fuel cell generators in the United States, using certain imported parts and components. In 1990, a division of DFCA's predecessor company, the Carrier Corporation, sought a classification ruling for certain components used in the manufacture of hydrogen fuel cell generators. The availability of classification rulings is one of the critical elements of the Mod Act's policy of "informed compliance," whereby CBP takes responsibility for informing the trade community of classification decisions and other rules so that members of the community can conduct themselves in accordance with such rules. CBP's own regulations hold that it is in the interest of the "sound administration" of Customs laws that persons engaging in any transaction affected by the Customs laws "fully understand the consequences of that transaction prior to its consummation." 19 C.F.R. § 177.1(a)(1). To that end, the regulations offer importers the opportunity to obtain classification rulings from CBP that set forth a "definitive interpretation of applicable law." *Id*.

15. In response to the 1990 ruling request, CBP issued a binding classification ruling, NY 854572, dated July 26, 1990. The ruling constitutes a "definitive interpretation of applicable law" under 19 C.F.R. § 177.1(a)(1), classifying the article then known as the PC25, which is a component of a hydrogen fuel cell generator.

16. The July 26, 1990 ruling stated that the steam methane reformer of the PC25 "converts natural gas and steam into a gas that is mostly hydrogen. The gas is then fed to the fuel cell which generates the DC for inversion to AC." For that reason, NY 854572 concluded that the applicable HTS subheading for the reformer is HTS 8405.10.0000, which provides for "Producer gas or water gas generators." *See* NY 854572.

17. In reliance on the 1990 ruling, DFCA and its predecessors imported the PC25 module and functionally equivalent articles under HTS heading 8405 for nearly 30 years. As the product evolved, the model number changed, but the function of the steam methane reformer remained equivalent, and the HTS Article Description of classification 8405.10.000 remained materially unchanged. Consequently, the applicability of NY 854572 was unchanged. In 2020, the steam methane reformer formed the core component of the imported DFCA model PC50, just as the functionally equivalent steam methane reformer formed the core component of the earlier PC25. As CBP determined in NY 854572, the principal function of the steam methane reformer is to generate a water gas that is mostly hydrogen, for use as a fuel in a fuel cell generator. As imported, the model PC50 subject to the instant action was functionally equivalent to the model PC25 considered in NY 854572. Namely, its principal function is to convert natural gas and steam into a gas that is mostly hydrogen, for use as a fuel in a fuel cell generator.

18. Therefore, since at least 1990, on the basis of NY 854572, DFCA and its predecessor companies have imported modules containing steam methane reformers, including the model PC50 at issue in this action, under HTS heading 8405.

19. In the January 2020 Notice of Action, CBP abruptly reclassified the PC50 under HTS 8503.00.9550, which provides for "Parts suitable for use solely or principally with the machines of heading 8501 or 8502; other; other; other." The Notice of Action contained no reference to the 1990 ruling, NY 854572. The applicable rate of duty for the new 8503 classification is 3%.

20. On April 30, 2020, pursuant to Section 514 of the Tariff Act of 1930, DFCA timely filed an administrative protest objecting to CBP's reclassification of the PC50 to HTS 8503.00.9550. The protest was filed at the Port of New York/Newark, New Jersey (Port Code 4601) regarding Entry No. CWL20160223. CBP assigned the matter protest number 460120113491. The protest objected to CBP's reclassification on the basis that the Notice of Action was contrary to the 1990 ruling. The protest further outlined why the essential character of the imported article (as provided in the 1990 ruling) is as a producer gas or water gas generator, and thus why the PC50 was properly classified as entered under HTS 8405.10.0000.

21. On August 18, 2020, CBP denied DFCA's protest, again without acknowledging or even addressing the applicability of the 1990 Ruling. As a result, DFCA was compelled to pay the applicable duty of 3% on the relevant import.

22. DFCA paid the 3% duty on Entry No. CWL20160223 by check dated March 6, 2020.

23. DFCA is the owner and the importer of record of the article involved in this action, and DFCA filed the protest. Therefore, as the person that filed the protest that was denied

pursuant to Section 515 of the Tariff Act of 1930, DFCA has standing in this action as a person entitled to commence a civil action as provided in 28 U.S.C. 2631(a).

24. Accordingly, DFCA has standing to bring suit in this matter.

## TIMELINESS OF THE ACTION

25. A plaintiff must commence a civil action contesting the denial of a protest under 28 U.S.C. § 1581(a) "within one hundred and eighty days after the date of the mailing of a notice of action of denial of a protest" under Section 515 of the Tariff Act of 1930. 28 U.S.C. § 2636(a).

26. The instant action contests Defendants' actions that resulted in a denial of Plaintiff's protest under Section 515 of the Tariff Act of 1930. That denial was issued by email by CBP on August 18, 2020.

27. This action is filed on February 12, 2021, which is within one hundred and seventy-eight days of the mailing of the denial of the protest.

28. Plaintiff has therefore timely filed this action.

## PROCEDURAL HISTORY

**I.      1990 Binding Ruling**

29. On July 26, 1990, CBP issued a binding ruling stating that the model PC25's steam methane reformer that converts natural gas into hydrogen for use in a fuel cell system, imported without the fuel cell stack, is properly classified under HTS 8405.10.0000 (producer gas or water gas generators). *See* NY 854572. That ruling was issued to a DFCA predecessor company, the Carrier Corporation, then a division of United Technology Corporation ("UTC"). ClearEdge Power Inc., purchased the assets of UTC Power in 2013, and DFCA acquired such assets out of the bankruptcy of ClearEdge Power, Inc. in 2014. Thus, for U.S. Customs purposes, NY 854572 was issued to a predecessor of DFCA.

30. Since at least 1990, DFCA and its predecessor companies have imported modules containing steam methane reformers, including current model PC50, under HTS heading 8405. The PC50, as imported, has the essential character of a water gas generator that converts natural gas and steam into a water gas that is mostly hydrogen. After import, in the United States, DFCA conducts further manufacturing of the item by integrating it with components not imported with the PC50 (including an Electronic System Module, fuel cell stacks, and other components). Once further manufacturing in the United States is complete, the final product is known as the DFCA PureCell® System, which is a 440-460kW fuel cell power plant that generates electricity.

31. The classification of the PC50 as imported in 2020 under HTS 8405.10.0000 is consistent with Customs Ruling NY 854572. That ruling considered the PC25 module. That ruling states that the steam methane reformer of the PC25 "converts natural gas and steam into a gas that is mostly hydrogen." The gas is then fed to the fuel cell which generates the DC power for inversion to AC power. For that reason, NY 854572 concluded that the applicable HTS subheading for the reformer is 8405.10.0000, which provides for "producer gas or water gas generators."

32. The core component of the PC25 module subject to NY 854572 is the steam methane reformer. Likewise, the steam methane reformer is the core component of the successor PC50 that is the subject of this action. As CBP determined in NY 854572, the principal function of the reformer is to generate a water gas. As imported, the PC50 that is the subject of this action is functionally equivalent to the module that was the subject of NY 854572. Its principal function is to convert natural gas and steam into a gas that is mostly hydrogen, for use as a fuel in a fuel cell generator. Consequently, the proper classification of the PC50 is 8405.10.0000, which provides for "producer gas or water gas generators."

33.     For those reasons, in reliance on NY 854572, DFCA continued to import the PC50 under HTS 8405.10.0000 until 2020.

## II.     CBP Notice of Action

34.     On January 9, 2020, CBP issued the Notice of Action (Form CF-29) that is the subject of DFCA's protest. The Notice of Action addressed DFCA's Entry No. CWL20160223. The imported item is a DFCA PC50. The HTS classification declared on entry was 8405.10.0000. The duty rate as declared was zero. The entered value of the item was $180,666.00. The Notice of Action determined that the HTS classification as entered was incorrect, and directed that the correct HTS classification was 8503.00.9550 (applicable rate of duty: 3%).

35.     In subsequent email correspondence to DFCA, CBP stated that the PC50, "lacking the control electronics and fuel cells, is thus considered an incomplete fuel cell system, and is classified as parts of a generator under 8503.00.9550."

## III.     Administrative Protest

36.     On April 30, 2020, DFCA timely filed an administrative protest of CBP's Notice of Action. The protest objected to CBP's reclassification of the PC50 to HTS 8503.00.9550. The protest provided facts and analysis supporting the proper classification of the PC50 under HTS 8405.10.0000,[2] and supporting the applicability of NY 854572.

---

[2] CBP's email message accompanying the Notice of Action added that "any other parts" of the DFCA PureCell® System "are also properly classified under 8503.00.9550, therefore parts that were entered under 8405.90.0000 [parts of a water gas generator] are also misclassified." In DFCA's view, and consistent with the 1990 binding ruling on the PC25, the referenced parts are in fact parts of a water gas generator, properly classified under 8405.90.0000. In DFCA's protest, DFCA requested that, to the extent that CBP approved the protest and classified the PC50 under HTS 8405.10.0000, that parts thereof be classified 8405.90.0000.

37. The protest provided details showing that the core component of the PC50 as imported is the steam methane reformer, functionally identical to the reformer considered in NY 854572, which produces chemical reactions to convert steam and natural gas into gas that is mostly hydrogen.

38. The protest also provided details demonstrating that the reclassification of the PC50 as an incomplete fuel cell generator is incorrect as a matter of CBP practice. In that connection, the protest demonstrated that CBP considers a fuel cell power plant imported with the fuel cell stack to be properly classified as a generator of electricity under HTS heading 8501. It also provided details demonstrating that CBP considers the fuel cell stack to provide the essential character of a fuel cell electrical generator. The protest also provided details demonstrating that the PC50 as imported did not include the fuel cell stack, and thus could not be considered to be an incomplete electricity generator.

39. The protest also provided details demonstrating that the fact that the PC50 generates fuel (rather than electricity) makes clear that the PC50 has the essential character of a generator of gas, and does not have the essential characteristic of a generator of electricity, and that CBP's reclassification under heading 8503 as an "incomplete" generator of electricity was incorrect.

40. The protest also provided details demonstrating that the relevant HTS rules and notes support classifying the PC50 under heading 8405.

## IV.   **Protest Denial**

41. On August 18, 2020, CBP denied DFCA's protest. As further outlined below, CBP's protest denial failed to establish a lawful basis for the reclassification of the PC50 under HTS 8503.

42.     Accordingly, DFCA files this civil action challenging CBP's denial of DFCA's protest.

## STATEMENT OF CLAIMS

## COUNT ONE

### CBP Incorrectly Classified the PC50

43.     Paragraphs 1 through 42 are restated and incorporated by reference as if fully stated herein.

44.     DFCA's model PC50 is properly classified under HTS 8405.10.0000. The function, and thus the essential character, of the PC50 is a water gas generator, as described in heading 8405. DFCA was in possession of a binding ruling to that effect, *i.e.*, NY 854572. The PC50 and prior models containing steam methane reformers had been imported under heading 8405 for decades in reliance on that ruling.

45.     CBP explained its denial of CBP's protest as follows: "The PC50 Supermodule satisfies the prerequisites for consideration as a part, Section 16 Note 2(b) instructs us to classify the machine as part under heading 8503. The appropriate subheading will be 8503.00.9550, HTSUS. The PC50 is an integral component of the fuel cell generator, a component that a complete generator cannot function without. Furthermore, the component cannot be identified as a separate and distinct commercial entity. As such, it must be considered a part for classification purposes."

46.     As is clear from the denial, CBP failed to address the applicability of NY 854572, the binding ruling DFCA relied upon in classifying the PC50 as imported. Additionally, CBP failed to address DFCA's explanation of the proper application of the relevant HTS rules and

notes, or the relevant practices of CBP supporting the proper classification of the PC50 under heading 8405.

47. CBP's denial of DFCA's protest misstates the function of the PC50 by characterizing it as an incomplete generator of electricity. Rather, the essential function of the PC50 is the generation of gas, not of electricity. As established in NY 854572, such articles are properly classified as water gas generators under HTS heading 8405.

48. CBP's explanation of its denial of DFCA's protest contains the incorrect assertion that certain HTS Chapter Notes direct CBP to find that the PC50 is properly classified under heading 8503. However, the denial makes no attempt to address the legal analysis of those notes and related rules contained in DFCA's protest, which concludes that the proper classification is heading 8405.

49. CBP's Notice of Action and its denial of DFCA's protest therefore fail to state a lawful basis for the reclassification of the PC50 from heading 8405 to heading 8503.

50. For these reasons, the Notice of Action and denial of DFCA's protest therefore should be declared unlawful and null and void, and other relief as outlined in DFCA's Prayer for Relief below should be granted.

## COUNT TWO

### CBP Violated the Law by Modifying or Revoking NY 854572 Without Affording Notice and Comment Required Under of 19 U.S.C. § 1625(c)(1)

51. Paragraphs 1 through 50 are restated and incorporated by reference as if fully stated herein.

52. CBP did not follow the procedures required pursuant to 19 USC § 1625(c)(1) prior to reclassifying the PC50 under a tariff heading other than one mandated by the classification ruling NY 854572.

53. Under Section 1625(c)(1), CBP must publish notice of a proposed interpretive ruling that would "modify (other than to correct a clerical error) or revoke a prior interpretive ruling or decision which has been in effect for at least 60 days," and CBP must afford interested persons 30 days to comment on the proposed ruling.

54. If, after considering the comments received during the notice and comment period, CBP decides to modify the treatment or revoke the ruling, it must publish a final notice of such modification in the Customs Bulletin within 30 days of the close of the notice and comment period. The modification or revocation takes effect only with respect to imports entered or withdrawn from warehouse at least 60 days after the publication of the modification.

55. The U.S. Court of Appeals for the Federal Circuit has held that a reclassification via a Notice of Action constitutes an interpretive ruling or decision "subject to § 1625(c)'s notice and comment procedures." *International Custom Products, Inc. v. United States*, 748 F.3d 1182, 1188 (Fed. Cir. 2014).

56. Here, NY 854572 was in effect for at least 60 days (i.e., from July 1990 to January 2020).

57. Moreover, NY 854572 applied to the PC50 as imported, because the PC50 has the same function as the steam methane reformer module classified in NY 854572. Thus, CBP's reclassification of the PC50 constituted a decision modifying or revoking NY 854572, within the purview of Section 1625(c).

58. Given the direct impact of CBP's decision on DFCA's imports, DFCA was an "interested person" as contemplated by the statute, and was entitled to notice and comment.

59. Consequently, CBP modified or revoked NY 854572 without publishing the required notice of the proposed revocation in the Customs Bulletin, without providing DFCA the

required 30-day opportunity to comment, without publishing the required final notice of revocation after consideration of DFCA's comments, and without applying the revocation only to DFCA's imports occurring at least 60 days after the publication as required.

60. The modification or revocation of NY 854572 by the Notice of Action and the denial of DFCA's protest was thus contrary to Section 1625(c)(1). The Notice of Action and denial of DFCA's protest therefore should be declared unlawful and null and void, and other relief as outlined in DFCA's Prayer for Relief below should be granted.

## COUNT THREE

### CBP Violated the Law by Effectively Modifying Prior Treatment of DFCA's Imports Without Affording Notice and Comment Under 19 U.S.C. § 1625(c)(2)

61. Paragraphs 1 through 60 are restated and incorporated by reference as if fully stated herein.

62. CBP did not follow the procedures mandated by Section 1625(c)(2) of the Mod Act prior to issuing the decision that modified its longstanding classification of modules containing steam methane reformers under HTS 8405.10.0000.

63. Under Section 1625(c)(2), CBP must publish notice of a proposed interpretive ruling that has the "effect of modifying the treatment previously accorded by the Customs Service to substantially identical transactions," and CBP must afford interested persons 30 days to comment on the proposed ruling.

64. If, after considering the comments received during the notice and comment period, CBP decides to modify the treatment, it must publish a final notice of the modification in the Customs Bulletin within 30 days of the close of the notice and comment period. The modification takes effect only with respect to imports entered or withdrawn from warehouse at least 60 days after the publication of the modification.

65.     The U.S. Court of Appeals for the Federal Circuit has held that a CBP Notice of Action reclassifying a product constitutes a "decision" within the meaning and purview Section 1625(c). *See International Custom Products, Inc. v. United States*, 748 F.3d 1182, 1188 (Fed. Cir. 2014).

66.     Since at least 1990, CBP classified the PC25 under HTS 8405.10.0000, and permitted the entry of PC25 and PC50 modules under that HTS classification. That consistent classification of modules containing steam methane reformers over that extended period of years constitutes a "treatment" accorded to imports of the article. CBP was obligated to apply that treatment to such transactions unless and until the treatment was modified in accordance with Section 1625(c)(2). *See Precision Specialty Metals, Inc. v. United States*, 116 F.Supp.2d 1350 (Ct' Int'l Trade 2000) (the term "treatment" denotes a pattern of actions by CBP as opposed to articulated policies or positions). The steam methane reformer of the PC50 is functionally identical to the steam methane reformer of the PC25 article that was the subject of the NY 854572 ruling. Therefore imports of the PC50 constitute a "substantially identical transaction" as contemplated by Section 1625(c)(2).

67.     CBP's consistent treatment of the imports over nearly 30 years of imports, from the 1990 ruling NY 854572, up to the time of the 2020 Notice of Action, was to permit imports of the article under HTS 8405. Thus CBP's Notice of Action and subsequent denial of DFCA's protest, by reclassifying the article under HTS heading 8503, had the effect of modifying the treatment previously accorded by CBP, as contemplated in Section 1625(c)(2).

68.     Given the direct impact of CBP's decision on DFCA's imports, DFCA was an "interested person" as contemplated by the statute, and was entitled to notice and comment.

69.     CBP's Notice of Action thus had the effect of revoking the prior classification treatment of imports of the article, without publishing the required notice of the proposed revocation in the Customs Bulletin, without providing the required 30-day opportunity to comment, without publishing the required final notice of revocation after consideration of comments, and without applying the revocation only to DFCA's imports occurring at least 60 days after the publication.

70.     The effective modification of the treatment previously accorded under NY 854572 and under 30 years of imports, by virtue of the Notice of Action and the denial of DFCA's protest, was thus contrary to Section 1625(c)(2). The Notice of Action and denial of DFCA's protest therefore should be declared unlawful and null and void, and other relief as outlined in DFCA's Prayer for Relief below should be granted.

## COUNT FOUR
### CBP Violated DFCA's Constitutional Right to Due Process

71.     Paragraphs 1 through 70 are restated and incorporated by reference as if fully stated herein.

72.     By failing to conduct the revocation, modification, or effective modification process in accordance with Section 1625, CBP deprived DFCA of rights under the Due Process Clause of the Fifth Amendment to the Constitution of the United States, which states that no person shall be deprived of property "without due process of law."

73.     By failing to conduct the revocation, modification, or effective modification in accordance with Section 1625, CBP deprived DFCA of rights accorded by statute to importers, and thus violated DFCA's rights under the Fifth Amendment Due Process Clause.

74.     By failing to conduct the revocation, modification, or effective modification in accordance with its own regulations, including 19 C.F.R. § 177.12, CBP deprived DFCA of

rights accorded by regulation to importers whose classification rulings or treatment are revoked or modified by Customs, and violated DFCA's rights under the Fifth Amendment Due Process Clause.

75. By changing its own rules after encouraging DFCA to rely upon those rules under principles embodied in the Mod Act, CBP violated DFCA's rights under the Fifth Amendment Due Process Clause.

76. By revoking, modifying, or effectively revoking DFCA's classification ruling and prior treatment of the PC50, CBP deprives DFCA of future profits and commercial opportunities, and denies DFCA its ability to recover costs incurred and resources expended in reliance on the ruling and prior treatment. Such deprivation violated DFCA's rights under the Fifth Amendment Due Process Clause.

77. Thus, the Notice of Action and CBP's denial of DFCA's protest should be declared unlawful and null and void, and other relief as outlined in DFCA's Prayer for Relief below should be granted.

*  *  *

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court:

(1) declare the Notice of Action unlawful and null and void *ab initio*;

(2) declare the denial of DFCA's protest unlawful and null and void *ab initio*;

(3) declare that NY 854572 (July 26, 1990) remains in full force and effect;

(4) permanently enjoin Defendants from classifying, reclassifying, liquidating, or reliquidating DFCA's subject imports of the PC50 in a manner inconsistent with NY 854572, unless and until Defendants revokes that ruling in

        accordance with 19 U.S.C. § 1625, 19 C.F.R. 177.12, and the U.S. Constitution;

(5)    order Defendants to refund, with interest, any duties Plaintiff paid pursuant to the reclassification;

(6)    award Plaintiff its costs and reasonable attorney fees; and

(7)    grant such other and further relief as may be just and proper.

        Respectfully submitted,

        /s/ *Christopher M. Loveland*
        Christopher M. Loveland
        SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
        2099 Pennsylvania Avenue, N.W., Suite 100
        Washington, DC 20006-6801
        Telephone: (202) 747-1900
        Facsimile: (202) 747-1901
        cloveland@sheppardmullin.com
        *Counsel to Doosan Fuel Cell America, Inc.*

Dated: February 12, 2021

OF COUNSEL:

J. Scott Maberry, Esq.
Reid S. Whitten, Esq.
Lisa C. Mays, Esq.
Mario A. Torrico, Esq.

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
*Counsel to Doosan Fuel Cell America, Inc.*
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, DC 20006-6801
Telephone: (202) 747-1900
Facsimile: (202) 747-1901
smaberry@sheppardmullin.com
rwhitten@sheppardmullin.com
lmays@sheppardmullin.com
mtorrico@sheppardmullin.com