UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. TIMOTHY C. STANCEU, JUDGE

—————————————————————————
|  | : |  |
| HYAXIOM, INC., F/K/A | : |  |
| DOOSAN FUEL CELL AMERICA, INC., | : |  |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : | Court No. 21-00057 |
|  | : |  |
| UNITED STATES OF AMERICA; | : | **NONCONFIDENTIAL** |
| U.S. CUSTOMS & BORDER PROTECTION; | : |  |
| TROY A. MILLER, | : |  |
| PERFORMING THE DUTIES OF THE | : |  |
| COMMISSIONER, | : |  |
|  | : |  |
| Defendants. | : |  |

—————————————————————————

**PLAINTIFF HYAXIOM, INC'S OPPOSITION TO DEFENDANTS'
CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON COUNT I**

Christopher M. Loveland
SHEPPARD, MULLIN, RICHTER &
 HAMPTON LLP
2099 Pennsylvania Avenue, N.W., Suite 100
Washington, D.C. 20006-6801
Telephone: 202.747.1900
Facsimile: 202.747.1901
cloveland@sheppardmullin.com

Of Counsel:

J. Scott Maberry
Lisa C. Mays
Jonathan Wang
SHEPPARD MULLIN RICHTER
 & HAMPTON LLP

*Attorneys for HyAxiom, Inc.*

Dated: May 15, 2023

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

SUMMARY OF THE ARGUMENT ...................................................................1

ARGUMENT .......................................................................................................4

I.      THE PARTIES AGREE THERE ARE NO DISPUTED ISSUES OF MATERIAL FACT AND THAT SUMMARY JUDGMENT IS APPROPRIATE .................................4

II.     THE PC50 SUPERMODULE IS PROPERLY CLASSIFIED AS A WATER GAS GENERATOR UNDER HTS HEADING 8405 ............................................4

      A.      There Is No Genuine Issue Of Material Fact That The PC50 Supermodule Generates Water Gas .......................................................4

      B.      Defendants' Attempt To Distinguish Between Synthesis Gas And Water Gas Is Irrelevant Because They Are Synonymous ...................................5

              1.      Defendants' Focus On The Water Gas Shift Reaction Does Not Negate The Fact That The Supermodule Generates Water Gas ................9

              2.      The Presence Of Carbon Dioxide And Steam Does Not Negate The Fact That The Supermodule Generates Water Gas ...................................10

      C.      Defendants' Interpretation of the ENs is Flawed Because They Impose Limitations Where None Exist. ................................................................12

              1.      A Water Gas Generator Is Not Solely Defined By How It Operates .........12

              2.      Defendants' Narrow Interpretation Of Water Gas Generator Fuel Sources Is Inaccurate .................................................................................14

      D.      Water Gas Generators Are Not Required To Be Self-Contained Apparatus .........14

      E.      Defendants' Position Regarding Synthesis Gas Is Directly At Odds With A Prior Ruling Regarding A Similar Article .......................................15

      F.      Defendants' Contention That HyAxiom Does Not Describe The PC50 Supermodule As Generating Water Gas Internally Or Publicly Is Not Only Immaterial, It Is Incorrect ....................................................................16

III.    THE PC50 SUPERMODULE SHOULD BE CLASSIFIED UNDER HTS HEADING 8405 PURSUANT TO GRI 2(a) .......................................................17

      A.      The PC50 Supermodule's "Essential Character" Is That Of A Water Gas Generator .......................................................................................................17

              1.      The "Essential Character" Of The PC50 Supermodule As A Whole Is To Generate Water Gas .............................................................................18

              2.      The Non-SMR Components Of The PC50 Supermodule Support The Water Gas Generation Function Of The SMR ...................................20

                    a.      Integrated Low Shift Reactor ..........................................................20

                    b.      Thermal Management System/Water Treatment System ..............21

B. The PC50 Supermodule Is Not "More Than" Or Substantially In Excess Of A Water Gas Generator ...................................................................23

1. The PC50 Supermodule Is Not "More Than" A Water Gas Generator.....................................................................................23

2. The PC50 Supermodule Is Not Substantially In Excess Of A Water Gas Generator ..................................................................24

3. The Language Of HTS Heading 8405 And The Associated Explanatory Note Suggest That The Category Of Water Gas Generator Is Intended To Be Broad ...........................................26

IV. A "PARTS" ANALYSIS UNDER SECTION XVI, NOTE 2(b) IS PRECLUDED.........26

CONCLUSION.................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Airflow Tech., Inc. v. United States*
  35 CIT 1540, 804 F. Supp. 2d 1292 (2011) ............................................................. 17

*Allstar Mktg. Group LLC v. United States*
  211 F. Supp. 3d 1319 (CIT 2017) ............................................................................. 25

*Amcor Flexibles Singen Gmbh v. United States*
  425 F. Supp. 3d 1287 (CIT 2020) ............................................................................. 18

*Arko Foods Int'l, Inc. v. United States*
  33 CIT 1891, 679 F. Supp. 2d 1369 (2009) ............................................................. 13

*Avecia, Inc. v. United States*
  30 CIT 1956, 469 F. Supp. 2d 1269 (2006) ......................................................... 3, 12

*Bauerhin Techs. Ltd. P'ship v. United States*
  100 F.3d 774 (Fed. Cir. 1997) .................................................................................. 27

*CamelBak Products, LLC v. United States*
  649 F.3d 1361 (Fed. Cir. 2011) ................................................................................ 24

*Casio, Inc. v. United States*
  73 F.3d 1095 (Fed. Cir. 1999) .................................................................................. 25

*Deckers Corp. v. United States*
  752 F.3d 949 (Fed. Cir. 2014) ..................................................................... 13, 25, 26

*Home Depot U.S.A., Inc. v. United States*
  435 F. Supp. 3d 1311 (CIT 2020) ............................................................................... 5

*Home Depot U.S.A., Inc. v. United States*
  915 F.3d 1374 (Fed. Cir. 2019) ................................................................................ 24

*JVC Co. of Am., Div. of US JVC Corp. v. United States*
  234 F.3d 1348 (Fed. Cir. 2000) ................................................................................ 23

*La Crosse Technology, Ltd. v. United States*
  723 F.3d 1353 (Fed. Cir. 2013) ................................................................................ 24

*Mitsubishi International Corp. v. United States*
  182 F.3d 887 (Fed. Cir. 1999) ............................................................................ 26, 27

*Nidec Corp. v. United States*
    68 F.3d 1333 (Fed. Cir. 1995)................................................................26

*Phone-Mate, Inc. v. United States*
    12 CIT 575, 690 F. Supp. 1048 (1988) ...............................................4

*Sigma-Tau HealthScience, Inc. v. United States*
    838 F.3d 1272 (Fed. Cir. 2016)............................................................14

*Trans-Atlantic Co. v. United States*
    60 CCPA 100, 471 F.2d 1397 (1973) ...................................................17

*United States v. Ford Motor Co.*
    463 F.3d 1267 (Fed. Cir. 2006).............................................................5

**USCIT Rules**

USCIT R. 56.....................................................................................................1

**CBP Rulings**

NY 854572
    (July 26, 1990) (*available at* https://rulings.cbp.gov/ruling/854572) .................................2, 15

HQ 088351
    (March 26, 1991) (*available at* https://rulings.cbp.gov/ruling/088351) .................................13

HQ H135337
    (May 20, 2011) (*available at* https://rulings.cbp.gov/ruling/H135337) .................................18

## INTRODUCTION

Pursuant to Rule 56 of the United States Court of International Trade, plaintiff HyAxiom, Inc. ("HyAxiom")[1] respectfully submits this Opposition to the Cross-Motion for Summary Judgment ("Cross-Motion") filed by the defendants, the United States *et al*. (collectively, the "Defendants"), and Reply in Support of HyAxiom's Motion for Summary Judgment on Count I of the First Amended Complaint ("Motion"). As set forth in greater detail below, there are no genuine issues of material fact that preclude judgment in favor of HyAxiom on Count I because the PC50 supermodules should be classified as water gas generators under Heading 8405 of the Harmonized Tariff Schedule of the United States ("HTS" or "HTSUS") when the General Rules of Interpretation ("GRI") are properly applied.

## SUMMARY OF THE ARGUMENT

The parties agree that summary judgment is appropriate because there are no genuine issues of material fact in dispute. The issue before the Court is a pure question of law; namely, whether the imported PC50 supermodules are properly classified under HTS Heading 8405 as water gas generators, and not under HTS Heading 8503 as claimed by Defendants.

Here, the primary function of the PC50 supermodule is to generate a water gas. And there is no genuine dispute that the PC50 supermodule generates a water gas. Indeed, Defendants expressly admitted in an interrogatory answer that "[t]he steam methane reformer in the FPS [fuel processing system] produces the chemical reactions to convert steam and natural gas into a water gas." *See* Plaintiff's ("Pl.'s") Statement of Material Facts ("SMF") ¶¶ 31-33; *id.* ¶ 29.a (citing Defendants' ("Defs.'") Response to Interrogatory ("Resp. to Interrog.") No. 1) (ECF 43-2). This admission, by itself, is fatal to the Defendants' Cross-Motion.

---

[1] HyAxiom was formerly known as Doosan Fuel Cell America, Inc.

Ignoring their own binding admission, Defendants attempt to muddy the waters by focusing on a false distinction between synthesis gas and water gas, now claiming that the PC50 supermodule generates synthesis gas or a hydrogen-rich fuel rather than a water gas. Defs.' Cross-Motion for Summary Judgment ("MSJ") pp. 27-28 (ECF 49). Contrary to that claim, there is no such distinction in the HTSUS. Synthesis gas and water gas have the same material composition: hydrogen and carbon monoxide. *See generally* Ex. H. to Defs.' SMF (ECF 49-2); *see also* Explanatory Note 84.05 (the gas produced by a water gas generator "is a mixture of hydrogen and carbon monoxide (water gas)").

It is undisputed that carbon monoxide remains in the hydrogen-rich water gas that comes from the steam methane reformer/fuel processing system ("SMR/FPS"). Pl.'s SMF ¶ 44; Defs.' Response to Pl.'s SMF ¶ 44 (ECF 49-1). Thus, that gas is a mixture of hydrogen and carbon monoxide. The only difference between synthesis gas and water gas is that synthesis gas refers to the *subsequent use* of water gas in the synthesis of chemicals or feedstock. *See generally* Ex. H. to Defs.' SMF. Because the water gas generated by the PC50 supermodule is not used for chemical synthesis or feedstock, the PC50 supermodule remains a water gas generator. Pl.'s SMF ¶ 16.

Defendants' newfound emphasis on synthesis gas is inherently self-contradictory. Defendants claim in their Response to HyAxiom's Statement of Undisputed Material Facts—for the first time and without any support—that the PC25 steam methane reformer ("SMR") that is the predecessor to the PC50 supermodule and was the subject of classification ruling letter New York ("NY") 854572 (July 26, 1990), generated synthesis gas, not water gas, despite the fact that the PC25 SMR was specifically classified as a water gas generator. Pl.'s SMF ¶¶ 17-28; Defs.' Resp. To Pl.'s SMF ¶ 27. But even if this assertion of Defendants were true—and it is not—

either the 1990 ruling letter was incorrect, which Defendants do not advance, or the gas

generated by the PC50 supermodule, which is based on the design of the PC25 SMR, qualifies as

a water gas. Defendants cannot have it both ways.

Defendants further pursue a flawed interpretation of the Explanatory Notes ("ENs") by

reading into them certain limitations on (1) how a water gas generator *must* operate (*i.e.*, by

claiming that a water gas generator must employ alternate phases of air and steam or water over

a grate), and (2) the type of fuel source that *must* be used, in order to draw tenuous distinctions

between a water gas generator and the PC50 supermodule. Defs.' MSJ p. 26. However, as

Defendants have conceded, HTS Heading 8405 is an *eo nomine* heading, which means that

Heading 8405 covers *all* forms of water gas generators, not just a limited set as Defendants

assert. Defs.' MSJ p. 33; Pl.'s SMF ¶¶ 8-9. Nor does Defendants' argument account for the fact

that *eo nomine* provisions are "written for the future," such that the HTSUS must be interpreted

flexibly to reflect advancements in technology. *See Avecia, Inc. v. United States*, 30 CIT 1956,

1991, 469 F. Supp. 2d 1269, 1299 (2006).

While Defendants contend in their Cross-Motion that the PC50 supermodule is "more

than"—or has features substantially in excess of—a water gas generator, and is designed to be

used as a part of a powerplant, Defendants' analysis runs afoul of HTSUS Section XVI, Note

2(a). The supermodule components cannot be found "more than" or substantially in excess of a

water gas generator because most of the components in the PC50 supermodule support the

generation of water gas. Defs.' MSJ pp. 33-34. Indeed, Defendants acknowledge that the PC50

supermodule's components support the reactions necessary to generate its gas output. *Id.* pp. 5-8.

Based on the Defendants' admissions that (1) the SMR generates water gas; (2) HTS

heading 8405 is an *eo nomine* heading; (3) Section XVI, Note 2(a) must be applied before Note

2(b); and (4) that the non-SMR components of the PC50 support the generation of gas,

Defendants fail to demonstrate entitlement to summary judgment in their favor. To the contrary,

pursuant to GRI 1, GRI 2(a), and Section XVI, Note 2(a), the PC50 supermodule is properly

classified as a water gas generator under HTS Heading 8405, and summary judgment should be

granted in favor of HyAxiom.

## ARGUMENT

## I.     THE PARTIES AGREE THERE ARE NO DISPUTED ISSUES OF MATERIAL FACT AND THAT SUMMARY JUDGMENT IS APPROPRIATE

"In ruling on motions for summary judgment, if there are no genuine issues of material

fact, the court must decide whether either party has demonstrated its entitlement to judgment as a

matter of law." *Phone-Mate, Inc. v. United States*, 12 CIT 575, 577, 690 F. Supp. 1048, 1050

(1988) aff'd, 867 F.2d 1404 (Fed. Cir. 1989). Here, the parties agree that there is no genuine

dispute as to any material fact. *See* Pl.'s Response to Defs.' SMF; Defs.' Resp. to Pl.'s SMF.

Thus, the issue before the Court is a pure question of law; namely, whether the imported PC50

supermodules are properly classifiable under HTS Heading 8405 and not Heading 8503. As

established in HyAxiom's Motion and as set forth in greater detail below, the PC50

supermodules are properly classifiable as water gas generators under Heading 8405.

## II.    THE PC50 SUPERMODULE IS PROPERLY CLASSIFIED AS A WATER GAS GENERATOR UNDER HTS HEADING 8405

### A.     There Is No Genuine Issue Of Material Fact That The PC50 Supermodule Generates Water Gas

In their Cross-Motion, Defendants repeatedly and incorrectly contend that the PC50

supermodule cannot be a water gas generator because it does not generate water gas. Defs.' MSJ

pp. 27-28. That assertion directly is at odds with the binding admission in Defendants' Response

**Protected Information Redacted**

to Interrogatory No. 1 that the SMR of the PC50 supermodule generates water gas. Defendants'

Response expressly states that:

> *The steam methane reformer in the FPS produces the chemical*
> *reactions to convert steam and natural gas into a water gas*.

*See* Pl.'s SMF ¶ 29.a (emphasis added). This is an admission by party-opponent[2] that is, by itself,

dispositive of HyAxiom's Motion. Although HyAxiom cited Defendants' interrogatory

admission multiple times in its Motion (Pl.'s MSJ pp. 9, 11, 22-23, 25-26, 38) (ECF 43-1),

Defendants ignore it completely.[3] Instead, Defendants focus on the water gas that is ███████

████████ in the integrated low shift reactor ("ILS") (also known as the low temperature shift

reactor) ████████████████████████████████████████████████████████████████████

█████████████   Defs.' MSJ p. 27-28. However, without the SMR to generate the water gas in the

first place, there could be no water gas shift reaction and no hydrogen-rich water gas. Pl.'s SMF

¶ 42. Moreover, nowhere do Defendants establish that a hydrogen-rich water gas should be

treated differently under the HTS than any water gas. Indeed, any gas that is a mixture of

hydrogen and carbon monoxide is considered a "water gas" under the HTS. *See, e.g.,* EN 84.05

(defining water gas as a mixture of hydrogen and carbon monoxide).

**B.    Defendants' Attempt To Distinguish Between Synthesis Gas And Water Gas
Is Irrelevant Because They Are Synonymous**

Defendants contend that the PC50 supermodule produces a hydrogen-rich fuel synthesis

gas and not a water gas, despite Defendants' prior admission that the SMR in the PC50

supermodule produces water gas. Defs.' MSJ p. 28; Pl.'s SMF ¶ 29.a. However, the HTSUS

---

[2] *Home Depot U.S.A., Inc. v. United States*, 435 F. Supp. 3d 1311, 1334 (CIT 2020) ("It is well established that answers to interrogatories may be admitted as admissions") (citations omitted).

[3] Any attempt by Defendants to explain away their binding admission in a reply brief would be improper, as arguments raised for the first time in a reply brief are waived. *See United States v. Ford Motor Co.*, 463 F.3d 1267, 1276 (Fed. Cir. 2006).

**Protected Information Redacted**

recognizes no such distinction. Synthesis gas and water gas are synonymous terms. *See generally*
Ex. H to Defs.' MSJ. Both gases are considered "hydrogen-rich fuels." Defs.' Resp. To Pl.'s
SMF ¶ 42 █████████████████████████████████████████████████████
████████████████████

  In terms of composition, both synthesis gas and water gas have the same primary element
and compound: hydrogen and carbon monoxide. The *Oxford Dictionary of Science* cited by
Defendants defines water gas as "a mixture of *carbon monoxide and hydrogen* produced by
passing steam over hot carbon (coke)," and the *Collins English Dictionary* cited by Defendants
defines water gas as "a mixture of *carbon monoxide and hydrogen* produced by passing steam
over hot carbon." *See* Ex. H to Defs.' MSJ (emphasis added).

  The definitions of synthesis gas that the Defendants cited in their Cross-Motion
demonstrate that synthesis gas is synonymous with water gas:

- The *McGraw-Hill Dictionary of Scientific and Technical Terms* ("MDST")
  defines synthesis gas as being "…for example, *carbon monoxide and hydrogen* to
  make hydro carbons or organic chemicals…." *See* Ex. H. to Defs.' MSJ (emphasis
  added).

- The *Oxford Dictionary of Science* ("ODS") defines synthesis gas as being "a
  mixture of *two parts hydrogen and one part carbon monoxide* made from
  methane and steam heated under pressure." *See id.* (emphasis added).

- The *Collins English Dictionary – Complete and Unabridged* ("CED") defines
  synthesis gas as being "a mixture of *carbon dioxide, carbon monoxide, and*

*hydrogen* formerly made by using water gas…."[4] *See* Ex. H. to Defs.' MSJ. (emphasis added).

- The *Random House Kernerman Webster's College Dictionary* ("RHD") defines synthesis gas as "any of several gaseous mixtures *consisting essentially of carbon monoxide and hydrogen*…." *See id*. (emphasis added).

Not surprisingly, many other definitions of synthesis gas not cited by the Defendants also demonstrate that synthesis gas and water gas are synonymous, including the following:

- The *Merriam-Webster Dictionary* defines synthesis gas as "a mixture of c*arbon monoxide and hydrogen*…." (Attached as Exhibit A.1 hereto) (emphasis added).

- The *ASTM Dictionary of Engineering Science & Technology* defines synthesis gas as "mixtures of gas in suitable proportions…such as *carbon monoxide and hydrogen….*" (Attached as Exhibit A.2 hereto) (emphasis added).

- *A Dictionary of Chemical Engineering* defines synthesis gas as "a mixture of *carbon monoxide* and *hydrogen*, made by steam reforming natural gas: $CH_4 +H_2O \rightarrow CO+3H_2$. A principal use of hydrogen is in the \*Haber process. *Before the Second World War, \*water gas was previously used*."[5] (Attached as Exhibit A.3 hereto) (emphasis added).

---

[4] Carbon dioxide is present because some of the the water gas shift reaction naturally occurs. *See* Ex. C to Defs.' SMF at 107:17-22 - 108:1-4; 148:18-22 - 149:1-4; 150:1-12; 154:2-8; *see* Ex. D to Defs.' SMF at 306:2-5 (Rule 30(b)(6) Dep. Tr. of Sridhar Kanuri).

[5] As the *Dictionary of Chemical Engineering* clearly indicates, water gas and synthesis gas are synonymous. With advancements in technology, more efficient methods for generating water gas were developed beyond the older method of blowing steam or water over hot carbon, allowing for the generation of water gas with an even higher concentration of hydrogen. These newer and more efficient methods include steam methane reforming. Pl.'s SMF ¶¶ 13-14. Water gas was previously used for the production of ammonia through the Haber process, but now the term synthesis gas is used when the gas is used for the specific purpose of chemical synthesis or feedstock.

-7-

The only difference between synthesis gas and water gas is that synthesis gas refers to the *subsequent use* of water gas in the synthesis of chemicals or feedstock. *See* Pl.'s SMF ¶ 15; *see also* Ex. H. to Defs.' MSJ (*MDST*) ("[Synthesis gas] prepared as feedstock for a chemical reaction.…"); *see* Ex. H. to Defs.' MSJ (*ODS*) ("[Synthesis gas] is used in the manufacture of various organic chemicals…."; *see id.* (*The American Heritage Dictionary of the English Language*) ("[Synthesis gas] as a mixture of gases made as a feedstock…."; *see id.* (*CED*) ("[Synthesis gas] for use in the synthesis of ammonia."); *see id.* (*RHD*) ("[Synthesis gas] used in the synthesis of chemical compounds, as ammonia and alcohols."); *see* Ex. A.1 ("[Synthesis gas] used especially in chemical synthesis."); *see* Ex. A.2 ("[Synthesis gas] for synthesis of methanol."). And neither of those subsequent uses is applicable to the PC50 supermodule. Here, it is undisputed that the gas generated by the SMR/FPS is designed to be used with fuel cell stacks to generate electricity and heat, *not* to produce chemicals or feedstock. Pl.'s SMF ¶¶ 19, 45; Defs.' MSJ p. 2. Synthesis gas is simply water gas used for a specific purpose. Thus, to the extent that the definition of synthesis gas could even be considered applicable to the PC50 supermodule, it is only because the gas generated by the supermodule consists of carbon monoxide and hydrogen*, i.e., is a water gas*.

Moreover, EN 84.05 makes clear that the HTS heading 8405 covers *all forms* of water gas generators, "whatever the intended use of the gas produced." *See* Ex. C.14 to Pl.'s SMF. Accordingly, even if the gas output of the SMR/FPS were a "synthesis gas," that still would not disqualify the PC50 supermodule from being classified under HTS Heading 8405. Rather, the undisputed evidence in this case clearly establishes that the gas produced by the PC50 supermodule is a mixture of hydrogen and carbon monoxide, which is a water gas as squarely provided for in Heading 8405.

1. **Defendants' Focus On The Water Gas Shift Reaction Does Not Negate The Fact That The Supermodule Generates Water Gas**

Defendants' focus on the "hydrogen-rich fuel" or "synthesis gas" output from the ILS following the ███████████ in the PC50 supermodule does not negate the fact that the PC50 supermodule generates water gas as a result of both the ███████████████ Pl.'s SMF ¶¶ 29.a-b; *id.* ¶ 46. After the SMR generates water gas in the ██████████, it remains *undisputed* that the ILS ████████████████████████████████████ ████████████████████████ *Id.* ¶¶ 42-46; Defs.' Response to Pl.'s SMF ¶ 43. As the name of that ██████████ itself implies, ████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████ Pl.'s SMF ¶¶ 42-46; Defs.' Response to Pl.'s SMF ¶ 44. Of relevance here, this water gas shift reaction *naturally* occurs when water gas is generated. *See* Ex. C to Defs.' SMF at 107:17-22 - 108:1-4; 148:18-22 - 149:1-4; 150:1-12; 154:2-8; *see* Ex. D to Defs.' SMF at 306:2-5 (Rule 30(b)(6) Dep. Tr. of Sridhar Kanuri). The ILS ████████████████████████████████ ████████████ Pl.'s SMF ¶¶ 42-46.

Even assuming, *arguendo*, that no water gas remained after the water gas shift reaction, Defendants still fail to account for the fact that the supermodule component where the water gas reaction occurs, ██████████████ fitted to the water gas generator, as squarely contemplated within HTS Heading 8405. Heading 8405 and EN 84.05 expressly include water gas generators fitted with "purifiers and other auxiliary apparatus." Pl.'s SMF ¶ 125. After the

SMR produces water gas, the water gas shift reaction ███████████████████████

███████████████████████████████████████████████████[6] Pl.'s SMF ¶¶ 41-46.

Thus, ██████████████████ within the water gas generator. Because the applicable HTS

Heading 8405 specifically includes water gas generators "with or without their purifiers," the

PC50 supermodule is properly classifiable as a water gas generator.

2. **The Presence Of Carbon Dioxide And Steam Does Not Negate The Fact That The Supermodule Generates Water Gas**

The presence of carbon dioxide and steam in the output of the SMR also does not negate

the fact that the supermodule generates water gas. Here, it is undisputed that the gas output from

the SMR/FPS: (1) contains hydrogen, (2) contains carbon monoxide, (3) does not contain

nitrogen, and (4) has a higher heating power than producer gas. Pl.'s SMF ¶¶ 33, 43; Defs.'

Resp. to Pl.'s SMF ¶¶ 33, 43. Those qualities of the gas produced by the SMR are part and parcel

of the definition of a water gas as that term is defined by the EN. *See* EN 84.05.

Looking at the PC50 supermodule from a technical perspective provides additional

context for understanding the SMR output. As HyAxiom's expert and Rule 30(b)(6) witness, Mr.

Sridhar Kanuri, explained during his deposition, carbon dioxide is present in the SMR because

some of the █████████████████████████████████████████████████

████████████████████████████████ *See* Ex. C to Defs.' SMF at 107:17-22 -

108:1-4; 148:18-22 - 149:1-4; 150:1-12; 154:2-8; *see* Ex. D to Defs.' SMF at 306:2-5 (Rule

30(b)(6) Dep. Tr. of Sridhar Kanuri). The water gas shift reaction requires the presence of water

gas in the first place—meaning water gas must have been generated by the SMR *before* the water

gas shift reaction can even occur. Pl.'s SMF ¶¶ 42-43. In order to perform efficient reactions, the

---

[6] The ILS █████████████████████████████████████████████████

water must be treated to remove impurities. Pl.'s SMF ¶ 42. Steam reforming is endothermic—

that is, heat must be supplied to the process for the reaction to proceed. *Id.* ¶ 34. This reaction

usually proceeds in temperatures ranging from 700 degrees Celsius to 1000 degrees Celsius. *See*

Ex. A.3 to Pl.'s SMF. Subsequently, in the water gas shift reaction, the resulting steam and

carbon monoxide are reacted using a catalyst to produce carbon dioxide and more hydrogen. *Id.*

  Further, the steam contained in the SMR gas output is merely unreacted steam left over

from the ███████████ This steam is not "generated" by the SMR at all. Pl.'s SMF ¶ 37; Defs.'

SMF ¶ 9; Ex. A.6 to Pl.'s SMF ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████ Instead, the

only gas that is generated by the ███████████ occurring in the SMR is water gas (*i.e.*, a

mixture of hydrogen and carbon monoxide); Pl.'s SMF ¶ 46 ███████████████████

███████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████

████████████████████████ Thus, the SMR only generates a water gas

output.

**C.    Defendants' Interpretation of the ENs is Flawed Because They Impose Limitations Where None Exist**

**1.    A Water Gas Generator Is Not Solely Defined By How It Operates**

Defendants assert that, under EN 84.05, all water gas generators "generate a water gas by regulating alternate phases of air and steam or water over a grate of the burned solid fuel in an incomplete exothermic combustion process." Defs.' MSJ p. 28. However, Defendants conveniently ignore the non-limiting language used in EN 84.05. The EN states that the gas generators "*usually*" consist of a certain construction and that they "*may*" be adapted for burning solid fuel. *See* Ex. C.14 to Pl.'s SMF ("[Producer gas generators] *usually* consist of a closed cylinder … enclosing a grate… [Water gas generators] are of similar construction…Both producer gas and water gas generators *may* be adapted for burning many kinds of solid fuel….") (emphasis added).

The EN contains no language that limits the coverage of Heading 8405 to a particular form of water gas generator exclusively. As Defendants have rightly conceded, HTS Heading 8405 is an *eo nomine* heading, which means that Heading 8405 covers all forms of water gas generators, not just a limited set as Defendants assert. Defs.' MSJ p. 33; Pl.'s SMF ¶¶ 8-9. Thus, the method that the SMR uses to generate water gas is immaterial.

Defendants' view that Heading 8405 only covers water gas generators that employ a combustion process (*see* Defs.' MSJ pp. 28-29) ignores the well-settled principle that tariff provisions are "written for the future," such that the HTSUS must be interpreted flexibly to reflect advancements in technology. *See Avecia, Inc. v. United States*, 30 CIT 1956, 1991, 469 F. Supp. 2d 1269, 1299 (2006) ("'[It is] inconceivable that Congress would have intended to foreclose from classification … future innovations[.]'") (quoting *Simmon Omega, Inc. v. United States*, 83 Cust. Ct. 14, 36-37 (1979)). This is particularly true for *eo nomine* headings like

**Protected Information Redacted**

Heading 8405. *See Deckers Corp. v. United States*, 752 F.3d 949, 957 (Fed. Cir. 2014) ("*Eo nomine* designations include all forms of an article, including future improvements to that article. *Eo nomine* terms are thus forward-looking, such that they include technological advancements….") (internal citations omitted).

Use of a combustion process to generate water gas is a rudimentary and inefficient way of generating water gas. Pl.'s SMF ¶ 11. Here, HyAxiom utilizes a ▮▮▮▮▮▮▮▮▮▮ and steam methane reforming, rather than combustion, in the design of the PC50 supermodule. *Id.* ¶¶ 31-33, 36-39. Steam methane reforming is a newer, more efficient technology that generates water gas that is richer in hydrogen than older methods. *Id.* ¶¶ 1, 10, 12-14, 16. The HTSUS is not typically interpreted in such a way as to limit the applicability of its provisions solely to old and inefficient technologies.

Similarly, Defendants' reliance on classification ruling letter HQ 088351 (March 26, 1991) to limit the applicability of Heading 8405 is misplaced. Defendants cite HQ 088351 in an attempt to buttress their contention that the use of steam methane reforming in the PC50 supermodule, rather than a combustion process of burning solid fuels, precludes the supermodule from being classified under Heading 8405. Defs.' MSJ p. 26. But HQ 088351 dealt not with a generator, but with an ion-membrane electrolyzer that used electrolysis to produce chlorine, hydrogen, and a byproduct of caustic soda. The ruling did *not* involve steam methane reforming or even components like those in the PC50 supermodule that are designed to generate water gas. Accordingly, CBP ruled (by application of GRI 1) that the article at issue there was an electrolyzer classifiable by its terms under Heading 8543 (providing for electrical machines and apparatus for electrolysis). Consequently, HQ 088351 is not applicable to the instant case. *See Arko Foods Int'l, Inc. v. United States,* 33 CIT 1891, 1900-01, 679 F. Supp. 2d 1369, 1378

(2009) (rejecting CBP's reliance upon a ruling letter to classify an article where the article differed significantly from the merchandise at issue in the letter).

Accordingly, HTS Heading 8405 properly includes generators for the production of water gas no matter the methodology or technology used.

### 2. Defendants' Narrow Interpretation Of Water Gas Generator Fuel Sources Is Inaccurate

Defendants improperly read limitations into EN 84.05 regarding the type of fuel used, where no such limitations exist. Defendants contend that a water gas generator *must* "burn solid fuel, such as coal or coke". Defs.' MSJ p. 28; *see also id.* pp. 19, 26. However, EN 84.05 does not use any such limiting language. To the contrary, EN 84.05 expressly states that the subject generators "*may* be adapted for burning many kinds of solid fuel." *See* Ex. C.14 to Pl.'s SMF (emphasis added). EN 84.05 further provides illustrative guidance on the kinds of water gas generators that *may* be covered by Heading 8405, and does not limit the forms of water gas generators that fall under Heading 8405. Nor could EN 84.05 contain such language limiting the scope of the *eo nomine* heading HTS 8405. It is well settled that portions of ENs that contradict their HTS headings "must be disregarded." *See Sigma-Tau HealthScience, Inc. v. United States*, 838 F.3d 1272, 1281 (Fed. Cir. 2016). Here, the PC50 supermodule method of operation is a newer, more efficient method of generating water gas than is described via examples contained in EN 84.05. Heading 8405 properly includes the production of water gas no matter the source of fuel used.

### D. Water Gas Generators Are Not Required To Be Self-Contained Apparatus

Defendants assert that the PC50 supermodule is not a closed or "self-contained apparatus." Defs.' MSJ p. 29. This assertion, however, has no bearing on the classification of the PC50 supermodule. EN 84.05 does not state that only self-contained water gas generators are

covered by Heading 8405. *See* Ex. C.14 to Pl.'s SMF. If the EN did so, it would contradict Heading 8405's inclusion of water gas generators "with or without their purifiers," and the EN's own statement that "[s]uch purifiers and other auxiliary apparatus are classified with the generators when presented therewith, provided they are clearly suitable for use together." *See* Pl.'s SMF ¶ 125 (emphasis omitted). The plain language of EN 84.05 is further buttressed by the testimony of CBP's National Import Specialist, who admitted during her deposition that generators presented without a purifier or auxiliary apparatuses may not necessarily be "self-contained," yet would still fall under Heading 8405. *Id.* ¶¶ 125-26.

Moreover, Defendants' position that a water gas generator must be self-contained contradicts the mandatory effect of GRI 2(a), which expands any reference to an article in a heading to include incomplete or unfinished articles having the "essential character" of that complete or finished article. As evidenced in ruling letter NY 854572 (July 26, 1990), CBP correctly classified the predecessor to the PC50 supermodule, the PC25 SMR, under HTS Heading 8405, despite the fact that it could not generate water gas in its imported state and required integration with other components, including the fuel cell stacks, the Electrical Systems Module, and the blower, before it could function as a water gas generator. Pl.'s SMF ¶ 27.b.

E.     **Defendants' Position Regarding Synthesis Gas Is Directly At Odds With A Prior Ruling Regarding A Similar Article**

In its response to HyAxiom's statement of undisputed material facts, Defendants claim for the first time that the PC25 SMR—a predecessor design of the PC50 supermodule that was the subject of NY 854572—"generate[d] a syngas or synthesis gas that is not water gas." Defs.' Response to Pl.'s SMF ¶ 27. However, NY 854572 specifically classified the PC25 SMR under HTS Heading 8405. NY 854572 was never modified or revoked. Defendants cannot have their cake and eat it too: either NY 854572 was incorrect (a position not advanced by Defendants), or

Protected Information Redacted

the gas generated by the PC50 supermodule, the successor design to the PC25 SMR, qualifies as

a water gas as defined in Heading 8405.

> **F.    Defendants' Contention That HyAxiom Does Not Describe The PC50 Supermodule As Generating Water Gas Internally Or Publicly Is Not Only Immaterial, It Is Incorrect**

Defendants contend that HyAxiom does not describe the PC50 supermodule as

generating water gas in its documentation. Defs.' MSJ p. 29. That contention is incorrect. For

example, HyAxiom's PureCell® Model 400 Product Data and Application Guide specifically

describes the ███████████████████████████████████████████████ The

description regarding the SMR states the following:



*See* Ex. A.6 to Pl.'s SMF at DFCA_00001573.The description regarding the ILS goes on to

specifically reference ████████████████ as follows:



*Id*. (emphasis added). Thus, there is no merit to the Defendants' contention that HyAxiom does

not refer to water gas in its documentation.

**III.    THE PC50 SUPERMODULE SHOULD BE CLASSIFIED UNDER HTS
HEADING 8405 PURSUANT TO GRI 2(a)**

**A.    The PC50 Supermodule's "Essential Character" Is That Of A Water Gas
Generator**

Defendants argue that HyAxiom only analyzes the SMR and not the imported PC50

supermodule as a whole. Defs.' MSJ pp. 30-32. However, in making that contention, Defendants

ignore the fact that HyAxiom classified the PC50 supermodule in its imported condition, taking

into each account each component of the PC50 supermodule in determining its "essential

character." Pl.'s MSJ pp. 11-12, 25-28.

Both parties agree that GRI 2(a) applies to the PC50 supermodule if the PC50

supermodule itself is an incomplete or unfinished article so long as the article has the "essential

character" of a complete water gas generator. Defs.' MSJ p. 30. GRI 2(a) provides that "[a]ny

reference in a heading to an article shall be taken to include a reference to that article incomplete

or unfinished, provided that, as entered, the incomplete or unfinished article has the 'essential

character' of the complete or finished article." GRI 2(a); *Airflow Tech., Inc. v. United States*, 35

CIT 1540, 1563, 804 F. Supp. 2d 1292, 1311 (2011) ("GRI 2(a) essentially functions to expand

the scope of any GRI 1 analysis to include certain unfinished articles."); *see also Trans-Atlantic*

*Co. v. United States*, 60 CCPA 100, 103, 471 F.2d 1397, 1399 (1973) ("The improvement in the

design of an article having an *eo nomine* classification which enables it to perform an additional

function does not militate against its continuing to be a form of the named article. Articles are

classifiable on the basis of their primary design, construction and function, even though they are

capable of performing other auxiliary or incidental operations.").

Only when considering the totality of the PC50 supermodule, including the SMR and all

other additional supporting components, can one determine that the "essential character" of the

PC50 supermodule is that of a water gas generator. All the other components (*i.e.*, ILS, TMS,

water treatment system ("WTS"), air processing system ("APS"), and frame) are clearly suitable for use with the SMR because they perform purifying or other auxiliary functions to support the PC50 supermodule's water gas generation function in accordance with EN 84.05. Pl.'s SMF ¶¶ 41, 42, 47-58. Defendant confuses emphasis on the primary component that mainly imparts the essential character of the supermodule with classification of only that component. While the component (the SMR) and end item (the PC50 supermodule) may share the same classification code, that does not mean that such a classification requires ignorance of the additional components of the end item. Rather, the essential character, and thus classification, of an end item may only be reached by considering all of its components.

HyAxiom's full and complete classification analysis considers all the components in the PC50 supermodule, and relies on well-established law and guidance to demonstrate that the PC50 supermodule, including all of its components, which together generate a water gas, is properly classified as a water gas generator. That the other components assist in the operation of the PureCell® Model 400 powerplant does not negate that the "essential character" of the PC50 supermodule as a water gas generator. While the PC50 supermodule may not function on its own, it is nevertheless squarely an incomplete or unfinished article that has the "essential character" of a water gas generator as entered, and thus is properly included in HTS Heading 8405 for purposes of Section XVI, Note 2(a).

1.      The "Essential Character" Of The PC50 Supermodule As A Whole Is To Generate Water Gas

"The 'essential character' of an article is 'that which is indispensable to the structure, core or condition of the article, *i.e.*, what it is.'" *Amcor Flexibles Singen Gmbh v. United States*, 425 F. Supp. 3d 1287, 1303 (CIT 2020) (applying GRI 3(b), which like GRI 2(a), also requires classification based on an article's "essential character"); *see also* HQ H135337 p. 5 (May 20,

2011) ("The longstanding position of CBP is that the term 'essential character' for purposes of GRI 2(a) means the attribute which strongly marks or serves to distinguish what an article is; that which is indispensable to the structure, core or condition of the article.") (*available at* https://rulings.cbp.gov/ruling/H135337).

The most important and indispensable function and attribute of the PC50 supermodule is the generation of water gas. Pl.'s SMF ¶ 31. As Defendants concede, "the steam methane reformer in the FPS produces the chemical reactions to convert steam and natural gas into a water gas." *Id*. ¶ 29.a. Without these reactions, the PureCell® Model 400 powerplant would not have the hydrogen-rich water gas necessary to generate electricity. *Id*. ¶¶ 19, 45; Defs.' MSJ p. 2. The reactions that occur within the SMR, along with the other components supporting the SMR, allow the PC50 supermodule to generate the necessary hydrogen rich water gas once connected into the PureCell® Model 400 powerplant. Pl.'s SMF ¶¶ 41, 42, 47-58. The SMR contains ███

███████████████████████████████████████████████

███████████████████████████████████████████

██████████████ *Id*. ¶¶ 34, 36-39. While the PC50 supermodule on its own is unable to perform its water gas generation function in its imported state, that fact does not negate the application of GRI 2(a) because GRI 2(a) allows for incomplete and unfinished articles. *See* GRI 2(a).

Despite Defendants' assertions, the PC50 supermodule as a whole generates a hydrogen-rich water gas, and thus falls squarely within the scope of EN 84.05. For that reason, the PC50 supermodule has the "essential character" of a water gas generator despite being unfinished or incomplete.

### 2. The Non-SMR Components Of The PC50 Supermodule Support The Water Gas Generation Function Of The SMR

The non-SMR components of the PC50 supermodule support the water gas generation function of the SMR, and thus are clearly suitable for use together with the SMR. Pl.'s SMF ¶¶ 41, 42, 47-58. Analyzing the PC50 supermodule as a whole, along with all the other components, does not preclude the PC50 supermodule from possessing the "essential character" of a water gas generator.

As EN 84.05 provides, an article falls under Heading 8405 even when incorporating multiple components, provided that the components support the generation of water gas. *See* Ex. C.14 to Pl.'s SMF. Components performing the purifying or other auxiliary functions must be both: (1) presented with producer or water gas generating components; and (2) clearly suitable for use together. Pl.'s SMF ¶ 125. As outlined below, each of the non-SMR components of the PC50 supermodule satisfies the criteria of HTS Heading 8405 because they support the water gas generating function of the SMR, with which they are presented at entry.

### a. Integrated Low Shift Reactor

The ILS in the PC50 supermodule supports the water gas generation function of the SMR because it



Pl.'s SMF ¶¶ 36, 41, 87-88, 125; *see also* EN 84.05 (identifying purifiers which clean "impurities such as … sulphurous compounds" as examples of components that may be "clearly suitable for use together" with water gas generating components for classification under Heading 8405). The ILS further

through the water gas shift reaction. Pl.'s SMF ¶ 42.

Defendants assert that the ILS cannot be cast as ███████████████████ ████████ because it is designed to increase the hydrogen available through a water gas shift reaction. Defs.' MSJ p. 35. However, Defendants ignore the fact that the ███████████ ██████████████████████████████████████████████████████████████████ ███████████████████████ Pl.'s SMF ¶ 42. EN 84.05 does not require that purifiers affect only "sulphurous" compounds; just that they clean the water gas of impurities. Pl.'s SMF ¶ 125. By ██████████████████, the ILS is a ████████ for the PC50 supermodule.

Moreover, the ILS also ████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████ Pl.'s SMF ¶ 47; *see also* EN 84.05 (stating water gas generators "are often fitted with … coolers," and identifying such coolers as examples of components that may be "clearly suitable for use together" with water gas generating components for classification under HTS Heading 8405).

### b.   Thermal Management System/Water Treatment System

Both the TMS and WTS also support the SMR. The TMS/WTS are ██████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████ ████████████ Pl.'s SMF ¶ 49-50. The TMS and WTS are accounted for by EN 84.05. *Id*. ¶ 125 (stating water gas generators "are often fitted with … coolers," and identifying such coolers as examples of components that may be "clearly suitable for use together" with water gas

---

[7] "Purify" means to "to rid of impurities"; "to rid of foreign or objectionable elements". "Purify," American Heritage Dictionary of the English Language, https://www.thefreedictionary.com/purify (last visited April 4, 2023).

generating components for classification under Heading 8405). 

Pl.'s SMF ¶¶ 51-53.

Defendants' Cross-Motion cites the following testimony from Mr. Kanuri in an attempt

to discredit the fact that the TMS and WTS support the generation of water gas:

> Q.   Does the thermal management system in any way support
>       the generation of gas?
>
> A.   No.
>
> Q.   How about the water treatment system?
>
> A.   No.

Defs.' MSJ p. 36. This selective quotation is misleading and incomplete because in the very next

question regarding whether the TMS and WTS support the functionality of the SMR, Mr. Kanuri

expressly states that the TMS and WTS support



See Ex. C to Defs.' SMF at 167:14-18 (Rule 30(b)(6) Dep. Tr. of Sridhar Kanuri) (emphasis

added). Without the TMS ▮▮▮▮▮▮▮▮▮▮▮ for use in the natural gas

reformation process and the WTS ▮▮▮▮▮▮▮▮, the SMR would not

be able to function properly and generate water gas.

Taking into account all the components of the PC50 supermodule, the "essential character" remains the generation of water gas.[8] That is because the primary function of the most important and indispensable component, the SMR, is to generate water gas. Each of the remaining components support the water gas generation function as contemplated in HTS Heading 8405 and EN 84.05.

**B.     The PC50 Supermodule Is Not "More Than" Or Substantially In Excess Of A Water Gas Generator**

Implicitly recognizing that the components of the PC50 supermodule support the generation of water gas, Defendants assert that because the components *also* support the energy and heat capabilities of the completed powerplant, the PC50 supermodule is "more than" or substantially in excess of a water gas generator. Defs.' MSJ pp. 32-34.

**1.     The PC50 Supermodule Is Not "More Than" A Water Gas Generator**

Defendants seek to invoke the defunct "more than" doctrine under the guise of caselaw interpreting the GRIs. Defs.' MSJ pp. 33-34. The Federal Circuit has recognized that the "more than" doctrine has been superseded by the GRIs. *JVC Co. of Am., Div. of US JVC Corp. v. United States,* 234 F.3d 1348, 1353 (Fed. Cir. 2000) (rejecting the proposition that when goods constitute "more than" a particular article because they possess additional significant features or perform additional non-subordinate functions, they are not classifiable as the underlying article, stating that "the 'more than' doctrine, having been supplanted by the GRIs, does not apply to cases arising under the HTSUS."). GRI 1 and Section XVI, Note 2(a), require that the PC50 supermodule be classified under HTS Heading 8405 despite being a "part" in a completed

---

[8] As set forth in HyAxiom's opening brief, the air processing system and frame are also clearly suitable for use together with the SMR because they perform related auxiliary functions. Pl.'s MSJ p. 28.

Protected Information Redacted

powerplant. HyAxiom does not dispute that the other components of the PC50 also support the

functioning of the PureCell® Model 400 powerplant. Defs.' MSJ p. 32-34. Nevertheless, as

outlined in Section III.A, *supra*, that does not detract from the simple fact that the PC50

supermodule's most indispensable function is to generate water gas, and it does so once it is later

incorporated into the finished PureCell® Model 400 powerplant. Pl.'s SMF ¶ 31.

### 2. The PC50 Supermodule Is Not Substantially In Excess Of A Water Gas Generator

Defendants rely on inapposite case law to support their contention that the PC50

supermodule is "substantially in excess of" a water gas generator. Defs.' MSJ p. 34. Each of the

cases cited by Defendants reveals a common thread: the features that were found to be

"substantially in excess" did not support the proposed headings.[9] That is not the case here. As

established in greater detail in Section III.A, *supra*, and in HyAxiom's Motion, each of the PC50

supermodule components support its water gas generating function. For example, without the



ILS, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮ Pl.'s SMF ¶¶ 36, 41, 87-88. Likewise, without the TMS, ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id*. ¶ 51. Additionally, without the

WTS, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮ *Id*. ¶¶ 38-39, 52-53. Thus, without these components, the generation of

---

[9] *See CamelBak Products, LLC v. United States*, 649 F.3d 1361, 1365 (Fed. Cir. 2011) (holding that a hydration component of the Camelbak "provides the article with a unique identity and use that removes them from the scope of the *eo nomine* backpack provision"); *La Crosse Technology, Ltd. v. United States*, 723 F.3d 1353, 1359 (Fed. Cir. 2013) (holding that a time keeping function prevented an electronic device that could measure and display atmospheric and weather conditions from being classified as a meteorological instrument as a whole and required a GRI 3(b) analysis); *Home Depot U.S.A., Inc. v. United States*, 915 F.3d 1374, 1830 (Fed. Cir. 2019) (holding that the doorknob and lock components of entry knobs were largely separate and served different purposes).

water gas through steam methane reforming would not be possible, and no water gas would be generated.

While some of the PC50 supermodule components also support the completed powerplant, the *essential characteristic (water gas generation) is preserved* and the PC50 supermodule performs the same essential function as the named exemplar under HTS Heading 8405. *See Casio, Inc. v. United States*, 73 F.3d 1095, 1098 (Fed. Cir. 1999) (finding that an article does not possess features "substantially in excess" of the covered article when it "has been improved or amplified but whose *essential characteristic is preserved* or only incidentally altered" and they are not to be "excluded from an unlimited *eo nomine* statutory designation.") (emphasis added); *see also Deckers Corp. v. United States*, 752 F.3d 949, 957 (Fed. Cir. 2014) ("*Eo nomine* terms are thus forward-looking, as long as the improved article *performs the same essential function* as the named exemplar.") (emphasis added).

Where the components and features support the merchandise's "essential character," Courts have determined them not to be "substantially in excess" of the covered article. In *Casio, Inc.*, for example, the subject merchandise – synthesizers – were not beyond the scope of the *eo nomine* provision for "electric musical instruments" because the additional features of the articles were "designed primarily to make it easier for a musician to create music." *Casio, Inc.*, 73 F.3d at 1098. Likewise, in *Allstar Mktg. Group LLC v. United States*, the Court found that the sleeves on a Snuggie still "preserved" the "essential characteristic[s] of a blanket." 211 F. Supp. 3d 1319, 1333 (CIT 2017). Here, the additional components that support the ability of the PC50 supermodule to generate water gas stand in stark contrast to the merchandise in the cases cited by Defendants.

3.    **The Language Of HTS Heading 8405 And The Associated Explanatory Note Suggest That The Category Of Water Gas Generator Is Intended To Be Broad**

While an *eo nomine* designation can be limited by a "shown contrary legislative intent, judicial decision, or administrative practice to the contrary," *Deckers Corp. v. United States*, 752 F.3d 949, 957 (Fed. Cir. 2014), there is no legislative history indicating that Congress intended to limit the scope of Heading 8405. In fact, the legislative intent indicates the exact opposite. The plain language of Heading 8405 describes water gas generators "with or without" purifiers. EN 84.05 allows for other components, such as purifiers and auxiliary apparatus, to be classified together with a water gas generator. *See* Ex. C.14 to Pl.'s SMF. The heading and the EN thus support a broad reading of the category of water gas generator.

Similar to the reasoning in *Nidec Corp. v. United States,* 68 F.3d 1333, 1337 (Fed. Cir. 1995), where a motor with its presence of clutches, gear boxes or pulleys could be classified as a motor because the EN accounted for those additional components, Heading 8405 and EN 84.05 act in the same manner for a water gas generator. Here, as the Federal Circuit found in *Nidec*, "[t]he broad sweep of the heading suggests a Congressional intent to overturn at least some prior application of the 'more than a motor' doctrine." *Id.* Specifically, the broad sweep of HTS heading 8405 suggests that the addition of other components that may perform additional features will not cause a water gas generator to be "more than" or substantially in excess of the covered article where, as here, the components also support the article's "essential character."

IV.    **A "PARTS" ANALYSIS UNDER SECTION XVI, NOTE 2(b) IS PRECLUDED**

The Court's interpretation in *Mitsubishi* and the EN to Section XVI, Note 2(a)[10] provide that an article that can be classified under a heading in Chapters 84 or 85 (*i.e.*, other than as a

---

[10] As set forth in HyAxiom's Motion, the EN states that "certain parts which in themselves constitute an article covered by a heading of this Section… are in all cases classified in their own

"part") must be classified under that heading, even if that article can be more specifically classified as a "part" of another machine. *Mitsubishi International Corp. v. United States*, 182 F.3d 887 (Fed. Cir. 1999). By contrast, Section XVI, Note 2(b) only applies if the "part" cannot be classified under Chapters 84 or 85. Thus, even if the PC50 supermodule could be described as a part of an article provided for in Heading 8503, if the supermodule is "included" as a good under a heading of Chapters 84 or 85, then the PC50 supermodule must be classified under that Chapter 84 or Chapter 85 heading and not as a "part" under Heading 8503.

Here, the parties agree on the order of analysis for Section XVI, Note 2: Note 2(a) is analyzed first, and Note 2(b) is analyzed only if Note 2(a) is inapplicable. Pl.'s MSJ pp. 15-19; Defs.' MSJ pp. 22-23, 38. Therefore, if the subject PC50 supermodule is properly classified pursuant to Note 2(a), Note 2(b) is precluded, *even if* the article could more specifically be classified as a "part" of another machine. *Mitsubishi*, 182 F.3d 884, 887 (Fed. Cir. 1999). Because the PC50 supermodule is classifiable as a water gas generator under Note 2(a) as demonstrated in HyAxiom's Motion and in Sections II-III *supra*, recourse to a "parts" analysis under Note 2(b) is improper.[11] In other words, the PC50 supermodule cannot be classified as a

---

appropriate heading even if specially designed to work as part of a specific machine." Pl.'s MSJ p. 17.

[11] In reclassifying the PC50 supermodule as a "part" under HTS heading 8503 in the instant case, CBP relied upon *Bauerhin Techs. Ltd. P'ship v. United States*, 100 F.3d 774 (Fed. Cir. 1997), to conduct a "parts" analysis regarding whether the supermodule was a "separate and distinct commercial entity" from the PureCell® Model 400 powerplant. *See* Pl.'s SMF ¶ 140. But, in doing so, CBP ignored a key holding of *Bauerhin*: a "parts" analysis is not applicable where, as here, there is an HTS section or chapter note governing the classification of the merchandise at issue. *See Bauerhin Techs. Ltd. P'ship*, 110 F.3d at 776-78 (holding car seat inserts were properly classifiable under heading 8404 covering "cushions" where Chapter 94, Note 3(b) required that result, "even though a fact finder might conclude that heading 9401 [covering 'parts' of seats of a kind used for motor vehicles] would ordinarily be the better classification for the imported seat inserts").

"part" under Note 2(b) because it is "included" under Heading 8405 and, as a result, must "in all cases" be classified under that Chapter 84 heading pursuant to Note 2(a).

## CONCLUSION

For the reasons set forth above and in HyAxiom's Motion, the subject PC50 supermodules are properly classifiable under HTS Heading 8405. Defendants' alternate classification under Heading 8503 is incorrect as a matter of law. Accordingly, HyAxiom's Motion should be granted and Defendants' Cross-Motion should be denied.

Respectfully submitted,

/s/ *Christopher M. Loveland*
Christopher M. Loveland
SHEPPARD, MULLIN, RICHTER &
  HAMPTON LLP
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C. 20006-6801
Telephone: 202.747.1924
Facsimile: 202.747.3832
cloveland@sheppardmullin.com

Of Counsel:

J. Scott Maberry
Lisa C. Mays
Jonathan Wang
SHEPPARD MULLIN RICHTER
  & HAMPTON LLP

Dated: May 15, 2023

*Attorneys for HyAxiom, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Christopher M. Loveland, counsel for Plaintiff, HyAxiom, Inc., certify that this brief complies with the word limitation stated in Rule (B)(1) of the Court of International Trade's Chamber Procedures. Specifically, this brief contains 8,674 words (excluding the parts exempted by the Chamber Procedures) as determined by the word count feature of the word processing program used to create this brief.

/s/ *Christopher M. Loveland*
Christopher M. Loveland

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that that on May 15, 2023, I caused the foregoing to be served via email and electronic filing upon the following counsel for the Defendants:

> Alexander J. Vanderweide
> Senior Trial Attorney
> Department of Justice, Civil Division
> Commercial Litigation Branch
> 26 Federal Plaza – Room 346
> New York, New York 10278
> alexander.vanderweide@usdoj.gov

> /s/ *Christopher M. Loveland*
> Christopher M. Loveland