UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. TIMOTHY C. STANCEU, JUDGE

| | | |
|---|---|---|
| HYAXIOM, INC., F/K/A DOOSAN FUEL CELL AMERICA, INC., | : : : | |
| Plaintiff, | : : | **PUBLIC VERSION** |
| v. | : : | Court No. 21-00057 |
| UNITED STATES OF AMERICA; U.S. CUSTOMS & BORDER PROTECTION; TROY A. MILLER, PERFORMING THE DUTIES OF THE COMMISSIONER, | : : : : : : | **Business Confidential Information Removed From Pages 5 and 7** |
| Defendants. | : : | |

## DEFENDANTS' SUPPLEMENTAL BRIEFING

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

AIMEE LEE
Assistant Director

Of Counsel:

Michael A. Anderson
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

ALEXANDER VANDERWEIDE
Senior Trial Counsel
Civil Division, U.S. Dept. of Justice
Commercial Litigation Branch
26 Federal Plaza
New York, New York 10278
Tel. (212) 264-9230 or 0482
Attorneys for Defendants

Dated: April 11, 2024

# TABLE OF CONTENTS

Issue 1: Application of note 3 to section XVI, HTSUS ................................................................. 1

Issue 2: Harmonized System Explanatory Note 84.05 ................................................................. 6

# TABLE OF AUTHORITIES

**Cases**

*Airflow Tech., Inc. v. United States*,
    524 F.3d 1287 (Fed. Cir. 2008) ................................................................................................ 8

*Aves. In Leather, Inc. v. United States*,
    423 F.3d 1326 (Fed. Cir. 2005) ................................................................................................ 2

*Bauerhin Techs. Ltd. P'ship v. United States,*
    110 F.3d 774 (Fed. Cir. 1997) .................................................................................................. 5

*Pomeroy Collection, Ltd. v. United States*,
    559 F. Supp. 2d 1374 (Ct. Int'l Trade 2008) ........................................................................... 2

*RKW Klerks, Inc. v. United States*,
    No. 2023-1210, 2024 WL 972217 (Fed. Cir. Mar. 7, 2024) ..................................................... 5

*Rubie's Costume Co. v. United States*,
    337 F.3d 1350 (Fed. Cir. 2003) ................................................................................................ 8

*United States v. Pompeo*,
    43 C.C.P.A. 9 (1955) ................................................................................................................. 5

*United States v. Willoughby Camera Stores, Inc.*,
    21 C.C.P.A. 322 (1933) ............................................................................................................. 5

**Harmonized Tariff Schedule of the United States**

General Rule of Interpretation 1 ............................................................................................. 1, 3, 4

    Explanatory Note to GRI 1 .................................................................................................... 2

Section XVI

    Explanatory Note to Section XVI (2017) ............................................................................. 4

i

Note 1 to section XVI ................................................................................................... 3

Note 2 to section XVI ..................................................................................... 2, 3, 4, 5, 6

    Note 2(a) ................................................................................................................. 3

    Note 2(b) ............................................................................................................. 3, 4

    Note 2(c) ................................................................................................................. 3

Note 3 to section XVI ......................................................................................... 1, 2, 3, 4, 6

Note 5 to section XVI ................................................................................................ 1, 2, 4

Chapter 84 .................................................................................................................. 2, 3, 5

Note 1 to Chapter 84 ...................................................................................................... 3

    Heading 8405 .............................................................................................. 4, 6, 7, 8

    Explanatory Note 84.05 .................................................................................. 6, 7, 8

        Section A ........................................................................................................ 7

        Section B ........................................................................................................ 7

        Section C ........................................................................................................ 7

        Section D .................................................................................................... 7, 8

Chapter 85 ...................................................................................................................... 2, 5

Note 1 to Chapter 85 ...................................................................................................... 3

    Heading 8501 ..................................................................................................... 4, 5

    Heading 8502 ........................................................................................................ 4

    Heading 8503 ........................................................................................................ 4

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. TIMOTHY C. STANCEU, JUDGE

| | | |
|---|---|---|
| HYAXIOM, INC., F/K/A DOOSAN FUEL CELL AMERICA, INC., | : : : | |
| Plaintiff, | : : | **PUBLIC VERSION** |
| v. | : : | Court No. 21-00057 |
| UNITED STATES OF AMERICA; U.S. CUSTOMS & BORDER PROTECTION; TROY A. MILLER, PERFORMING THE DUTIES OF THE COMMISSIONER, | : : : : : : : | **Business Confidential Information Removed From Pages 5 and 7** |
| Defendants. | : : | |

## DEFENDANTS' SUPPLEMENTAL BRIEFING

Defendants, United States *et al.* (the Government), respectfully submit this memorandum to address the issues in the Court's March 12, 2024 letter requesting supplemental briefing. ECF No. 57.

### Issue 1: Application of note 3 to section XVI, HTSUS

The first issue that the Court requests supplemental briefing from the parties is, in pertinent part, as follows:

> The court requests that the parties submit briefing addressing the issue of whether note 3 to section XVI, HTSUS, applies to the determination of the correct heading for classification of the PC50 supermodule. If a party responds that note 3 to section XVI applies to that determination, then the court requests that the party address the issue of whether, and if so how, the court may determine the "principal function" that the PC50 supermodule is designed and built to perform when installed as a component in the PureCell Model 400 powerplant, based on the uncontested facts as stated in the parties' respective cross-motions. If a party responds that note 3 does not apply to this case, then the court requests that the party explain why application of this section note is not required by GRI 1, HTSUS and note 5 to section XVI, HTSUS.

ECF No. 57.  Note 3 to section XVI, HTSUS (Note 3) states:

> Unless the context otherwise requires, composite machines consisting of two or more machines fitted together to form a whole and other machines designed for the purpose of performing two or more complementary or alternative functions are to be classified as if consisting only of that component or as being that machine which performs the principal function.

Note 5 to section XVI, HTSUS (Note 5) states: "For the purposes of these notes, the expression 'machine' means any machine, machinery, plant, equipment, apparatus or appliance cited in the headings of chapter 84 or 85."

The Government submits that Note 3 does not apply to the classification of the subject PC50 supermodule (PC50) imported by HyAxiom, Inc. f/k/a Doosan Fuel Cell America, Inc. (HyAxiom) because "context otherwise requires"—namely, in contrast to the composite machines of Note 3, the PC50 is a part that must be classified under Note 2 to section XVI, HTSUS (Note 2).  Specifically, the PC50 is a "part" of the PureCell® Model 400 (Model 400).

General Rule of Interpretation (GRI) 1 states, in relevant part, that "for legal purposes, classification shall be determined according to the terms of the headings and any relative Section or Chapter Notes and, provided such headings or Notes do not otherwise require, according to the [remaining GRIs.]"  As interpreted by its Explanatory Note, GRI 1 establishes that "the terms of the headings and any relative section or Chapter Notes are paramount, *i.e.*, they are the first consideration in determining classification."  *See also The Pomeroy Collection, Ltd. v. United States*, 559 F. Supp. 2d 1374, 1385 (Ct. Int'l Trade 2008).  The HTSUS section and chapter notes "are not optional interpretive rules," but instead have the force of statutory law.  *Aves. In Leather, Inc. v. United States*, 423 F.3d 1326, 1333 (Fed. Cir. 2005) (internal quotation marks omitted).

2

Of relevance here, Section XVI, Note 2 provides as follows:

> 2. Subject to note 1 to this section, note 1 to chapter 84 and to note 1 to chapter 85, parts of machines (not being parts of the articles of heading 8484, 8544, 8545, 8546 or 8547) are to be classified according to the following rules:
>
> (a) Parts which are goods included in any of the headings of chapter 84 or 85 (other than headings 8409, 8431, 8448, 8466, 8473, 8487, 8503, 8522, 8529, 8538 and 8548) are in all cases to be classified in their respective headings;
>
> (b) Other parts, if suitable for use solely or principally with a particular kind of machine, or with a number of machines of the same heading (including a machine of heading 8479 or 8543) are to be classified with the machines of that kind or in heading 8409, 8431, 8448, 8466, 8473, 8503, 8522, 8529 or 8538 as appropriate. However, parts which are equally suitable for use principally with the goods of headings 8517 and 8525 to 8528 are to be classified in heading 8517;
>
> (c) All other parts are to be classified in heading 8409, 8431, 8448, 8466, 8473, 8503, 8522, 8529 or 8538 as appropriate or, failing that, in heading 8487 or 8548.

Importantly, Note 2 expressly states that it is subject only "to note 1 to [Section XVI], note 1 to chapter 84 and to note 1 to chapter 85." Note 2 is, therefore, not subject to Note 3 or any of the other remaining section and chapter notes. In other words, Notes 2 and 3 are mutually exclusive of one another. Thus, applying Note 3 to parts of machines covered by Note 2, such as the imported PC50, would violate GRI 1's requirement that only relative section notes apply.

Moreover, if Note 3 could be applied in conjunction with Note 2, then classifying a part under the hierarchy of rules set forth in Notes 2(a), (b), and (c) would be made an ambiguous and untenable undertaking. Note 2 is structured to classify parts following three straightforward rules that must be applied in order: first Note 2(a), then if that rule is not applicable, Note 2(b), and if that rule is also not applicable, Note 2(c). For instance, as relevant here, in accordance with the terms of Note 2(a), if the subject part is not a good fully described by any of the

3

applicable headings, then Note 2(b) provides a simple analysis, *i.e.*, whether the part is suitable solely or principally with a particular kind of machine.  A Note 3 principal function analysis would interfere with Note 2's order of operations.  Consequently, because the PC50 is a part that is subject to Note 2, then in accordance with GRI 1, and as "context otherwise requires," Note 3 does not apply.

In furtherance of this point, both the Government and HyAxiom have maintained in their respective briefing that classification of the PC50 falls within the purview of a Note 2 "parts" analysis.  The parties agree that the PC50 is a "part" of the Model 400, and that the Model 400 is an electric generator of HTSUS heading 8501.  *See* ECF Nos. 49-50, Defs' Cross-Mot. at 39, and the sources cited therein.  HyAxiom contends that, pursuant to Note 2(a), the PC50 is a part included in HTSUS heading 8405, and therefore, is to be classified in that heading.  *See generally* ECF Nos. 43-44, Pl. Mot. at 16.  In contrast, we contend that HTSUS heading 8405 does not describe the PC50, and that GRI 1 and Note 2(b) instruct that the PC50—which is a part suitable for use solely or principally with a particular kind of machine (the Model 400)—is "to be classified with the machine of that kind" (electric generators of HTSUS heading 8501) "or in heading…8503…as appropriate…"[1]  *See generally*, Defs' Cross-Mot. at 23.

The broad definitional criteria of a machine set forth by Note 5 in no way undermines the assessment that the PC50 is a part of a machine requiring a Note 2 parts analysis.  Put differently, Notes 2 and 5 accord with one another here because the PC50 is a part of a machine

---

[1] HTSUS heading 8503 provides for "Parts suitable for use solely or principally with the machines of heading 8501 or 8502."  In furtherance of our contention that the PC50 is appropriately classified in HTSUS heading 8503, we highlight the Explanatory Note to Section XVI (2017) regarding "(II) PARTS (Section Note 2)," which specifies that "{s}eparate headings are, however, provided for : … (F)   Parts of the machines of heading 85.01 or 85.02 (heading 85.03)."

4

subject to Note 2, and the machine that the PC50 is a part of—the Model 400—is a machine "cited in the headings of chapter 84 or 85" (HTSUS heading 8501), as Note 5 provides.

Our contention that the PC50 is, pursuant to GRI 1, provided for *eo nomine* under HTSUS heading 8503 as a part "suitable for use solely or principally with the" Model 400, a "machine[ ] of heading 8501" is further grounded in longstanding case law regarding the criteria of what constitutes a "part." In *RKW Klerks, Inc. v. United States*, No. 2023-1210, 2024 WL 972217, at *2 (Fed. Cir. Mar. 7, 2024), the U.S. Court of Appeals for the Federal Circuit recently restated the court's prior holdings as follows:

> There are multiple ways in which an imported item can be considered a "part" of another article. The determination is specific to the particular facts presented in each case. *See Bauerhin*, 110 F.3d at 779. We have held that if an item is "dedicated solely for use with another article and is not a separate and distinct commercial entity," *id.*, or is an "integral, constituent, or component part, without which the article to which it is to be joined, could not function as such article," *id.* (quoting *United States v. Willoughby Camera Stores, Inc.*, 21 C.C.P.A. 322, 324 (1933)), then the item is a part. *Id*.

When discussing its predecessor opinions in *Bauerhin Technologies Limited Partnership v. United States*, 110 F. 3d 774 (Fed. Cir. 1997) and *United States v. Pompeo*, 43 C.C.P.A. 9 (1955), the Federal Circuit in *RKW Klerks* stated: "In both of these instances, the items at issue were considered parts because they could not serve a function apart from being a component of the larger article." *RKW Klerks*, 2024 WL 972217, at *2.

These instances are readily mirrored here. The PC50 is an "integral, constituent, or component part," without which, the Model 400 could not function as an electric generator. The PC50 is also dedicated solely for use with the Model 400, and cannot function on its own, but rather, functions only when incorporated into a complete Model 400. Finally, the PC50 is not a separate and distinct commercial entity, as the [[ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ]], but is

5

always incorporated into a complete Model 400. *See* Defs' Cross-Mot. at 40-41, and the sources cited therein. Accordingly, that the PC50 is accurately considered a part of the Model 400, is further "context [that] otherwise requires" the applicability of Note 2 to the PC50's classification, as opposed to Note 3.

### Issue 2: Harmonized System Explanatory Note 84.05

The second issue that the Court requests supplemental briefing from the parties is as follows:

> The Explanatory Note for HS heading 84.05 contains the following guidance on how the scope of international heading 84.05 is to be interpreted:
>
> This heading covers self-contained apparatus and plant for generating *any kind of gas* (e.g., producer gas, water gas and mixtures thereof, or acetylene) whatever the intended use of the gas produced (lighting, industrial heating, feeding gas engines, welding or cutting metals, chemical synthesis, etc.).
>
> EN 84.05 (emphasis added). The court requests that the briefs the parties submit in response to this letter include argument, to supplement that which already has been submitted, that addresses the effect the court should accord to this guidance in approaching the classification issue presented by this case.

First, as noted in our briefing, Defs' Cross-Mot. at 23-24, fn. 2, and the sources cited therein, the Explanatory Notes provide guidance as to the meaning of tariff terms, but such guidance is not legally binding. Nonetheless, the Explanatory Note to HTS 84.05 (84.05 EN) is helpful, in conjunction with reliable scientific authorities and dictionary definitions, in describing what constitutes a water gas generator covered by HTSUS heading 8405. As explained in our briefing, water gas generators included within HTSUS heading 8405 generate a mixture of hydrogen and carbon monoxide by incompletely combusting forced air and water or steam over burning solid fuels. But neither the PC50 in an operational Model 400, nor any of the PC50's

**THIS PAGE CONTAINS CONFIDENTIAL INFORMATION**

constituent components, generate a water gas, let alone generate a water gas in the manner described by the 84.05 EN. Rather, the PC50 catalytically reforms natural gas to produce a hydrogen-rich fuel or syngas that consists of [[ ███████████████████████ ███████████████████████████████ ]] for the Model 400's fuel cell stacks (FCS) to generate electricity, heat, and water. *See* Defs' Cross-Mot at 7, 27, and the sources cited therein.

The Court's inquiry italicizes the phrase "*any kind of gas*" in the 84.05 EN. This phrase ineluctably refers to, and is circumscribed by, the gases produced by the generators listed in HTSUS heading 8405, *i.e.*, "{p}roducer gas or water gas generators, with or without their purifiers; acetylene gas generators and similar water process gas generators, with or without their purifiers; parts thereof." The heading does not provide for a general class of goods (*i.e.*, gas generators of any kind), but rather, describes a limited set of gas generators.

The phrase "similar water process gas generators" in HTSUS heading 8405 indicates that the heading may cover generators that generate a gas other than a pure producer gas, water gas, or acetylene gas—a phrase that "any kind of gas" in the 84.05 EN appears to reference—but such generators must still use a water process and be similar to acetylene gas generators, as the heading provides. Moreover, the scope of the phrase "any kind of gas" in the 84.05 EN is further contextualized by the language immediately following the phrase in the parenthetical "(e.g., producer gas, water gas and mixtures thereof, or acetylene)," as well as by the generator descriptions in sections (A) – (D) to the 84.05 EN. Taken together, the 84.05 EN clarifies that the gas generators of HTSUS heading 8405 are of a certain design and construction, all of which employ a particular water process to generate a certain subset of gases. Sections (A) and (B) describe combustion-type producer and water gas generators. Section (C) covers acetylene water

7

process generators involving calcium carbide. And section (D) covers other water process generators, such as oxygen and ethylene generators. None of these sections describe, or apply to, a functioning PC50 in an operable Model 400, which among other varied and vital functions, catalytically reforms natural gas to produce a hydrogen-rich synthesis gas fuel.

Ultimately, the 84.05 EN hews to the tariff terms themselves: generators of producer and water gas, mixtures of such, and acetylene and other water process gas generators. It is well-settled that that the Explanatory Notes may not expand, contradict, or limit otherwise unambiguous tariff terms, and therefore, the scope of a heading. *See, e.g.*, *Airflow Tech., Inc. v. United States*, 524 F.3d 1287, 1293 (Fed. Cir. 2008); *Rubie's Costume Co. v. United States*, 337 F.3d 1350, 1359 (Fed. Cir. 2003). Consequently, neither the PC50, nor any component of the Model 400, can be described by the terms of HTSUS heading 8405 or the 84.05 EN.

                      Respectfully submitted,

                      BRIAN M. BOYNTON
                      Principal Deputy Assistant Attorney General

                      PATRICIA M. McCARTHY
                      Director

By:   /s/ Justin R. Miller
        JUSTIN R. MILLER
        Attorney-In-Charge
        International Trade Field Office

        /s/ Aimee Lee
        AIMEE LEE
        Assistant Director

Of Counsel:

        /s/ Alexander Vanderweide
Michael A. Anderson        ALEXANDER VANDERWEIDE
Office of the Assistant Chief Counsel    Senior Trial Counsel
International Trade Litigation        Civil Division, U.S. Dept. of Justice
U.S. Customs and Border Protection    Commercial Litigation Branch
        26 Federal Plaza
        New York, New York 10278

Tel. (212) 264-9230 or 0482
Attorneys for Defendants

Dated: April 11, 2024