UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. TIMOTHY C. STANCEU, JUDGE

_____

|  | : |  |
|---|---|---|
| HYAXIOM, INC., F/K/A | : | |
| DOOSAN FUEL CELL AMERICA, INC., | : | |
|  | : | |
| Plaintiff, | : | |
|  | : | |
| v. | : | Court No. 21-00057 |
|  | : | |
| UNITED STATES OF AMERICA; | : | **NONCONFIDENTIAL** |
| U.S. CUSTOMS & BORDER PROTECTION; | : | |
| TROY A. MILLER, | : | |
| PERFORMING THE DUTIES OF THE | : | |
| COMMISSIONER, | : | |
|  | : | |
| Defendants. | : | |

_____ :

## PLAINTIFF HYAXIOM, INC.'S SUPPLEMENTAL BRIEFING ON THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT

Christopher M. Loveland
SHEPPARD, MULLIN, RICHTER &
 HAMPTON LLP
2099 Pennsylvania Avenue, N.W., Suite 100
Washington, D.C. 20006-6801
Telephone: 202.747.1900
Facsimile: 202.747.1901
cloveland@sheppardmullin.com

Of Counsel:

J. Scott Maberry
Lisa C. Mays
Jonathan Wang
SHEPPARD MULLIN RICHTER
 & HAMPTON LLP

*Attorneys for HyAxiom, Inc.*

Dated: April 11, 2024

# <u>TABLE OF CONTENTS</u>

Page

INTRODUCTION ..................................................................................................................1

QUESTIONS PRESENTED..................................................................................................1

ARGUMENT ........................................................................................................................1

I.     APPLICATION OF NOTE 3 TO SECTION XVI OF THE HTSUS
ESTABLISHES 8405 AS THE CORRECT HEADING FOR CLASSIFICATION
OF THE PC50 SUPERMODULE ................................................................................1

     A.     Application Of Note 3 To Section XVI Is Appropriate ...........................................1

          1.     GRI 1 Requires The Terms Of The Headings And Any Relative
Section Notes Be Analyzed First ................................................................1

          2.     The PC50 Supermodule Is The Type Of Machine To Which Note 3
To Section XVI Applies, And Requires A Principal Function
Analysis.......................................................................................................2

     B.     Application Of Note 3 To Section XVI Requires Classification Of The
PC50 Supermodule By Its "Principal Function" ......................................................4

          1.     The Undisputed Facts Establish That The Principal Function Of
The PC50 Supermodule Is To Generate Water Gas ...................................5

          2.     The Principal Function Of The PC50 Supermodule Fits Squarely
Within The Meaning Of Heading 8405 .......................................................7

          3.     All Components Of The PC50 Supermodule Perform Functions
Complementary To The Generation Of Water Gas .....................................8

II.    THE EXPLANATORY NOTE FOR HTS HEADING 84.05 SUPPORTS
CLASSIFICATION OF THE PC50 SUPERMODULE UNDER HTS 8405. ..................9

     A.     The Water Gas Generated By The PC50 Supermodule Is The Water Gas
Contemplated By HTS Heading 8405 ....................................................................10

          1.     It Is Undisputed That The PC50 Supermodule Generates Gas.................10

          2.     EN 84.05 Supports That HTS Heading 8405 Includes Generators
Of Gas For Whatever The Intended Use....................................................11

     B.     The PC50 Supermodule Is Not Required To Be Self-Contained For The
Article To Fall Under HTS 8405 ............................................................................11

          1.     HTS 8405 Is Not Limited To *Only* Self-Contained Apparatuses .............12

          2.     Even If EN 84.05 Is Limited To Only Self-Contained Apparatuses
And The PC50 Supermodule Is Not Considered To Be Self-
Contained, The EN Is Not Binding............................................................13

CONCLUSION....................................................................................................................14

TABLE OF AUTHORITIES

Page(s)

Cases

*Apple Inc. v. United States*
    964 F.3d 1087 (Fed. Cir. 2020)................................................................12, 13

*Belimo Automation A.G. v. United States*
    37 CIT 1645 (2013), *aff'd,* 774 F.3d 1362 (Fed. Cir. 2014)........................4, 5, 6, 7

*BenQ Am. Corp. v. United States*
    646 F.3d 1371 (Fed. Cir. 2011)................................................................3, 9, 13

*Brookside Veneers, Ltd. v. United States*
    847 F.2d 786 (Fed. Cir. 1988)................................................................4

*Cont'l Auto. Sys., Inc. v. United States*
    589 F. Supp. 3d 1215 (CIT 2022)........................................................10

*Container Store v. United States*
    864 F.3d 1326 (Fed. Cir. 2017)............................................................10, 13

*McKesson Canada Corp. v. United States*
    365 F. Supp. 3d 1310 (CIT 2019)........................................................4, 5, 6, 7

*Mita Copystar Am. v. United States,*
    21 F.3d 1079, 1082 (Fed. Cir. 1994)....................................................8, 10

*Moen Inc. v. United States*
    294 F. Supp. 3d 1337 (CIT 2018)........................................................2

*Nidec Corp. v. United States*
    68 F.3d 1333 (Fed. Cir. 1995)..............................................................13

*Park B. Smith, Ltd. v. United States*
    347 F.3d 922 (Fed. Cir. 2003)..............................................................2

*Rubie's Costume Co. v. United States*
    337 F.3d 1350 (Fed. Cir. 2003)............................................................12

*Telebrands Corp. v. United States*
    865 F. Supp. 2d 1277 (CIT 2012)........................................................2

Statutes

19 U.S.C. § 1202............................................................................................2

Harmonized Tariff Schedule of The United States (HTS)

Chapter 84

    HTS Heading 8405 .................................................................... passim

    HTS Heading 8422 ...........................................................................7

Chapter 85

    HTS Heading 8503 ...........................................................................4

Section XVI

    Section XVI, Note 1...........................................................................2

    Section XVI, Note 2........................................................................2, 4

    Section XVI, Note 3.................................................................. passim

    Section XVI, Note 5...........................................................................3

Other Authorities

CAMBRIDGE DICTIONARY,
    https://dictionary.cambridge.org/us/dictionary/english/sulphurous...........................................8

MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/auxiliary ..............................8

MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/principal;
    http://www.merriamwebster.com/dictionary/function............................................................4

NY J81394 (Feb. 28, 2003) (*available at* https://rulings.cbp.gov/ruling/J81394)..........................8

**INTRODUCTION**

Pursuant to the Court's March 12, 2024 letter order (ECF 57), Plaintiff HyAxiom, Inc. ("HyAxiom") respectfully submits this supplemental brief on the two issues raised by the Court in connection with the parties' cross-motions for summary judgment. As set forth in greater detail below, both issues identified by the Court support the classification of the PC50 supermodules under Heading 8405 of the Harmonized Tariff Schedule of the United States ("HTS" or "HTSUS") and, accordingly, the entry of summary judgment in favor of HyAxiom on Count I of its First Amended Complaint.[1]

**QUESTIONS PRESENTED**

1.      Whether Note 3 of Section XVI of the HTSUS applies to classification of the PC50 supermodule and, if so, how should the Court determine the article's "principal function"?

2.      What effect should the Court accord to the Explanatory Note ("EN") for HTS heading 84.05 when classifying the article?

**ARGUMENT**

**I.      APPLICATION OF NOTE 3 TO SECTION XVI OF THE HTSUS ESTABLISHES 8405 AS THE CORRECT HEADING FOR CLASSIFICATION OF THE PC50 SUPERMODULE**

    **A.      Application Of Note 3 To Section XVI Is Appropriate**

        **1.      GRI 1 Requires The Terms Of The Headings And Any Relative Section Notes Be Analyzed First**

The General Rules of Interpretations ("GRIs"), applied in numerical order commencing

---

[1] As directed by the Court, HyAxiom respectfully submits revisions to its bracketing of confidential information in its Memorandum in Support of its Motion for Summary Judgment on Count I of the First Amended Complaint (ECF 43-1) in Exhibit 1, and its Opposition to Defendants' Cross-Motion for Summary Judgment and Reply in Support of its Motion for Summary Judgment (ECF 51) in Exhibit 2.

with GRI 1, govern classification under the HTS. *Moen Inc. v. United States*, 294 F. Supp. 3d

1337, 1341 (CIT 2018). GRI 1 instructs that, "for legal purposes, classification shall be

determined according to the terms of the headings and any relative section or chapter notes…."

*See, e.g.*, *Park B. Smith, Ltd. v. United States*, 347 F.3d 922, 926 (Fed. Cir. 2003) ("Section and

Chapter Notes are not optional interpretative rules, but are statutory law, codified at 19 U.S.C. §

1202."). The headings and relative notes must be exhausted before less precise inquiries, such as

those directed under subsequent GRIs, are considered. *See Telebrands Corp. v. United States,*

865 F. Supp. 2d 1277, 1280–81 (CIT 2012). Therefore, to determine whether PC50

supermodules are classified under heading 8405, the Court must assess the relative Section and

Chapter notes.

HTS 8405 is within Chapter 84, which is within Section XVI. Thus, under GRI 1, any

Section Notes to Section XVI that would be considered "relative" to the classification of the item

must be considered. Section XVI, Note 1 is not applicable because the PC50 supermodule is

indisputably not described by any of the listed exceptions set out in Note 1. The parties

previously briefed the application of Section XVI, Note 2, which supports classification of the

supermodule under the specific heading HTS 8405. *See* ECF 43-1; ECF 49.

The Court's letter order (ECF 57) properly suggests that Note 3 to Section XVI, may also

be considered "relative" to the resolution of the instant HTS classification. As outlined herein,

application of Note 3 is appropriate and further supports the classification of the PC50

supermodule under Heading 8405.

> **2.    The PC50 Supermodule Is The Type Of Machine To Which Note 3 To
> Section XVI Applies, And Requires A Principal Function Analysis**

Note 3 to Section XVI states as follows:

> Unless the context otherwise requires, composite machines
> consisting of two or more machines fitted together to form a whole

> and other machines designed for the purpose of performing two or
> more complementary or alternative functions are to be classified as
> if consisting only of that component or as being that machine
> which performs the principal function.

Note 3 is a note of "general application which, in certain circumstances, calls for a principal

function analysis." *BenQ Am. Corp. v. United States*, 646 F.3d 1371, 1380 (Fed. Cir. 2011)

(recognizing that Chapter and Section Notes referencing a specific heading are context for

purposes of Note 3 to Section XVI).

Note 3 applies generally to the classification of composite machines or machines

designed for the purpose of performing two or more complementary or alternative functions.

Note 3 to Section XVI may be considered "relative" to the PC50 supermodule because the PC50

supermodule may be described as a composite machine or a machine designed for the purpose of

performing two or more complementary or alternative functions.

Section XVI, Note 5 clarifies that "[f]or the purposes of these notes [including Note 3],

the expression 'machine' means any machine, machinery, plant, equipment, apparatus or

appliance cited in the headings of chapter 84 or 85." Here, the parties do not dispute that the

PC50 supermodule is a machine. Both parties have previously asserted that the PC50

supermodule is properly classified in machine headings within Section XVI. *See generally* ECF

43-1 at 15, ECF 49 at 38. Additionally, in its imported state, the PC50 supermodule contains

several apparatus fitted together into one imported article supported by a single frame. ECF 43-2,

Plaintiff's ("Pl.'s") Statement of Material Facts ("SMF") ¶¶ 57-58.

The PC50 supermodule performs certain complementary functions that support its

principal function. Pl.'s SMF ¶¶ 36, 41, 49-50, 54-55, 87-88. Most importantly, the PC50

supermodule contains a "steam methane reformer [which] produces the chemical reactions to

convert steam and natural gas into a water gas." *Id*. ¶ 32 (citation omitted). It also contains other

components whose functions support the water gas generating function of the Steam Methane

Reformer ("SMR"). *See* Pl.'s SMF ¶ 29. Thus, the PC50 supermodule may be considered to be a

machine with two or more complementary functions.

Note 2(a) further supports this interpretation of Note 3 to Section XVI. Section Note 2(a)

provides that an article falling under any Chapter 84 or 85 heading (other than parts) must be

classified under that heading, *even if* that article could more specifically be classified as a part of

another heading. As applied to the PC50 supermodule, Section XVI, Note 2(a) requires that even

if PC50 supermodules could fall under HTS 8503, because the PC50 supermodules are

nonetheless included in another heading of Chapter 84 (HTS 8405), then the PC50 supermodules

must be classified under the HTS 8405 heading and not as a part under HTS 8503. *See* ECF 43-1,

Section II.A. Thus, Note 3 to Section XVI applies and does not require classification of the PC50

supermodule other than by its principal function.

**B.     Application Of Note 3 To Section XVI Requires Classification Of The PC50 Supermodule By Its "Principal Function"**

Classification of an imported article under Note 3 to Section XVI is performed by

reference to the "principal function" of the article. *See* HTS Section XVI, Note 3. Application of

Note 3 requires a fact-intensive analysis. *See, e.g.*, *Belimo Automation A.G. v. United States*, 37

CIT 1645, 1655-56 (2013), *aff'd* 774 F.3d 1362 (Fed. Cir. 2014); *McKesson Canada Corp. v.

United States,* 365 F. Supp. 3d 1310, 1317-22 (CIT 2019). The HTSUS does not define the

phrase "principal function." To assist in ascertaining the common meaning of a tariff term, the

Court may rely upon its own understanding of the term and consult dictionaries, lexicons,

scientific authorities and other reliable sources as an aid. *See Brookside Veneers, Ltd. v. United

States*, 847 F.2d 786, 789 (Fed. Cir. 1988). The common definition of the adjective "principal" is

"most important, consequential, or influential", and "function" is defined as "the action for

which a person or thing is specially fitted or used or for which a thing exists." (Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/principal; http://www.merriamwebster.com/dictionary/function). Therefore, for the purposes of the Court's analysis, the "principal function" of the article is the most important, consequential, or influential action for which the machine is specially fitted or used, or for which the article exists.

### 1. The Undisputed Facts Establish That The Principal Function Of The PC50 Supermodule Is To Generate Water Gas

The principal function (*i.e.*, the most important, consequential, or influential action) of the PC50 supermodule is to generate water gas. Courts generally apply a three-step process to classify an article by its principal function: (1) identify the principal function of the imported article as shown in discovery; (2) analyze this function within the meaning of the proposed heading; and (3) consider the distinct functions of the component machines to determine whether they are complementary to a primary function. *See Belimo*, 37 CIT at 1655-57 (2013) (applying a similar test to classify an electric motor by its principal function after determining any distinct functions were complementary to the function of the motor); *McKesson,* 365 F. Supp. 3d at 1317-22.

Here, the principal function of the PC50 supermodule is to generate water gas. As admitted by the Defendants, "'[t]he steam methane reformer in the FPS produces the chemical reactions to convert steam and natural gas into a water gas.'" Pl.'s SMF ¶ 32 (quoting Defendants' ("Defs.'") Response ("Resp.") to Interrogatory No. 1). All the other components of the PC50 supermodule (*i.e.*, the integrated low shift reactor ("ILS"), thermal management system ("TMS"), water treatment system ("WTS"), air processing system ("APS"), and frame) are for use with the SMR to perform purifying or auxiliary functions to support the generation of water gas. *Id.* ¶¶ 41-43, 51-52, 56, 57-58. Specifically, the SMR in the imported PC50 supermodule

performs the primary function of generating water gas, and is supported by the other components

of the machine that perform complementary functions. The SMR contains a ███████ burner to

generate heat, which is required for the primary water gas reaction to occur and tubes ███████

████████████████████████████████████████████████████████████████

███████████████████ to generate water gas. *See id.* ¶¶ 33-34, 36-39. Thus, the principal

function of the PC50 supermodule is to generate water gas.[2]

The fact that the PC50 supermodule will be further manufactured into the PureCell®

Model 400 powerplant after importation does not affect the principal function analysis. The

Court faced that same issue when analyzing the principal function of an article ultimately

intended for use in a larger system in *Belimo*, 37 CIT 1645 (2013). In that case, the Court held

that an electric motor (with several component machines), though imported solely for its use in

HVAC systems, was an electric motor upon importation and properly classified as such. *Id.* at

1655-56.

A principal function analysis is distinct from an examination of an imported article's

principal purpose. *See McKesson,* 365 F. Supp. 3d at 1322 ("The government's argument that the

principal purpose of the [machine] should govern the classification of the merchandise is

similarly unavailing," finding that "the government conflates the aspirational goals of the users

of the [machine] with purpose or use as a classification principle."). HyAxiom does not dispute

---

[2] We note that although the PC50 supermodule may not be able to perform its water gas
generating function in its imported state (because it requires, among other things, a natural gas
source), that fact does not negate that it nonetheless has the principal function of generating a
water gas. *See* Pl.'s SMF ¶¶ 31-39. Moreover, in NY 854572 (ECF 43-1 Ex. C.13), CBP
classified the PC25 reformer module imported by HyAxiom's predecessor company under HTS
8405, even though that module (like the supermodule at issue here) also could not generate water
gas in its imported state. *See* Pl.'s SMF ¶¶ 17-28. Thus, CBP classified the incomplete or
unfinished water gas generator under HTS 8405. *See id.*

that the ultimate purpose of the PC50 is its use in the PureCell® Model 400 powerplant to generate electricity, but as in *Belimo,* the PC50 supermodule must be classified by its principal function. The principal function of the PC50 supermodule as imported is to produce water gas.

### 2.     The Principal Function Of The PC50 Supermodule Fits Squarely Within The Meaning Of Heading 8405

 To perform a principal function analysis, courts have considered whether the established principal function of the article fits within the meaning of a given HTS heading. For example, in *McKesson,* in considering the application of heading 8422, "other packing or wrapping machinery (including heat-shrink wrapping machinery)," the Court found that "[t]hrough its composite machine functions, the [machine's] purpose is, with minimal error, to provide medical professionals with packaged medications labeled with patient-specific information" making it a properly classified packing machine under heading 8422. 365 F. Supp. 3d at 1322.

Heading 8405 of the HTSUS covers the following: "Producer gas or water gas generators, with or without their purifiers; acetylene gas generators and similar water process gas generators, with or without their purifiers; parts thereof." The heading describes the exact function of the PC50 supermodule. Pl.'s SMF ¶ 33. The gas generated by the SMR fits squarely within the definition of "water gas" contained in the Explanatory Notes – *i.e.*, "a mixture of hydrogen and carbon monoxide … having a higher heating power than producer gas." *Id*. ¶ 6. Here, it is undisputed that the gas output from the SMR: (1) contains hydrogen, (2) contains carbon monoxide, and (3) has a higher heating power than producer gas. Pl.'s SMF ¶¶ 33, 43; Defs.' Resp. to Pl.'s SMF ¶¶ 33, 43.

Additionally, HTS 8405 specifically contemplates a water gas generator with purifying components, like the purifying components contained in the PC50 supermodule. EN 84.05 (which provides guidance on how to interpret HTS 8405[3]) expressly states as follows:

> For certain uses, … producer or water gases must be cleaned of impurities such as dust, tars, sulphurous[4] compounds, etc., and sometimes reheated or cooled. For this purpose, the generators are often fitted with purifiers … , coolers, dryers, reheaters, etc. Such purifiers and other auxiliary apparatus are classified with the generators when presented therewith, provided they are clearly suitable for use together.

(Emphasis omitted). Thus, when components performing purifying or other auxiliary[5] functions are (1) presented with producer or water gas generating components, and (2) clearly suitable for use together with those components, then the subject merchandise is clearly within the meaning of HTS 8405.[6]

### 3.    All Components Of The PC50 Supermodule Perform Functions Complementary To The Generation Of Water Gas

After determining that the principal function of the PC50 supermodule is the generation of water gas, the next step within the Note 3 analysis is to determine whether each component performs a complementary function to that action. Here, the function of each of the components of the PC50 supermodule is complementary to the generation of water gas. Pl.'s SMF ¶¶ 1, 4, 10,

---

[3] *See Mita Copystar Am. V. United States*, 21 F.3d 1079, 1082 (Fed. Cir. 1994).

[4] "Sulphurous" is an alternate spelling of "sulfurous." *See* "Sulphurous," CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/sulphurous (last visited December 6, 2022) (attached as Exhibit C.22).

[5] "Auxiliary" means "offering or providing help[;] functioning in a subsidiary capacity." "Auxiliary," MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/auxiliary (last visited December 6, 2022) (attached as Exhibit C.5); *see also* Pl.'s SMF ¶ 129.

[6] *See also*, NY J81394 (Feb. 28, 2003) (*available at* https://rulings.cbp.gov/ruling/J81394). In this ruling, a Biomass Gasifier System, which included cleanup or purification equipment consisting primarily of a gas scrubber and associated filters and four different units for separate chemical reactions, was classified under 8405 due to its ultimate production of producer gas.

16, 59-60. As part of the PC50 supermodule, those components complement the article's primary function, which is to generate water gas.

The apparatus in the PC50 supermodule include the SMR, which performs the primary function of generating water gas; the ILS, which purifies the natural gas input by removing sulfur compounds before the natural gas enters into the SMR, Pl.'s SMF ¶¶ 36, 41, 87-88; the TMS and WTS, which are two closely interconnected components of the PC50 supermodule that together maintain thermal balance in the system so water gas can be generated by the SMR, *id*. ¶¶ 49-50; and the APS, which supplies process air to the fuel processing system of the PC50 supermodule, *id*. ¶¶ 54-55. Finally, the frame of the PC50 supermodule provides a support structure for the supermodule components and unites all the components into a whole article upon import. *Id*. ¶¶ 57-58.

Accordingly, the functions of each component of the PC50 supermodule are complementary to the generation of water gas, *i.e.*, by generating water gas, by purifying the gas, adjusting the temperature of the gas, or performing another related auxiliary function. For these reasons, the principal function of the PC50 supermodule is the generation of water gas. Consequently, by operation of GRI 1, the tariff headings, and Note 3 to Section XVI, the PC50 supermodule is properly classified under HTS 8405 as a water gas generator.

## II.    THE EXPLANATORY NOTE FOR HTS HEADING 84.05 SUPPORTS CLASSIFICATION OF THE PC50 SUPERMODULE UNDER HTS 8405.

EN 84.05, which supports classification of the PC50 supermodule under HTS 8405, states as follows:

> This heading covers self-contained apparatus and plant for generating any kind of gas (e.g., producer gas, water gas and mixtures thereof, or acetylene) whatever the intended use of the gas produced (lighting, industrial heating, feeding gas engines, welding or cutting metals, chemical synthesis, etc.).

*See* Ex. C.14 to Pl.'s SMF. The terms of the HTS headings and any relative Section or Chapter notes are statutory law, but the Court may also consider ENs for additional guidance. *BenQ Am. Corp.*, 646 F.3d at 1376; *Mita Copystar Am.*, 21 F.3d at 1082 (recognizing that Explanatory Notes provide guidance in interpreting scope of HTSUS subheadings); *see also Cont'l Auto. Sys., Inc. v. United States,* 589 F. Supp. 3d 1215, 1224 (CIT 2022) ("Generally, definitions in the ENs are more persuasive than dictionary definitions…."). ENs are not binding on the Court, but "generally [are] indicative of the proper interpretation" of the tariff schedule. *Cont'l Auto. Sys., Inc.,* 589 F. Supp. 3d at 1224. Should the EN contravene the plain meaning of a tariff provision, the heading takes precedence. *See Container Store v. United States*, 864 F.3d 1326, 1331–32 (Fed. Cir. 2017) (citing *Airflow Technology v. United States*, 524 F.3d 1287, 1293 (Fed. Cir. 2008) ("[W]hen the language of the tariff provision is unambiguous and the Explanatory Notes contradictory, we do not afford [the Explanatory Notes] any weight.").

### A.    The Water Gas Generated By The PC50 Supermodule Is The Water Gas Contemplated By HTS Heading 8405

As set forth in Section I, *supra*, the PC50 supermodule generates water gas. *See* Pl.'s SMF ¶¶ 29.a, 32. The PC50 supermodule converts natural gas and steam into hydrogen and carbon monoxide. Pl.'s SMF ¶¶ 73-75, 81-90, 111. Then, the PC50 supermodule purifies the water gas into a more hydrogen-rich water gas. Pl.'s SMF ¶ 42.

### 1.    It Is Undisputed That The PC50 Supermodule Generates Gas

While the parties dispute the type of gas generated by the PC50 supermodule, that dispute is immaterial to the instant inquiry under EN 84.05 because EN 84.05 states that HTS 8405 covers items for generating "any kind of gas (e.g. producer gas, water gas and mixtures thereof, or acetylene)." ECF 43-1, at 28; Pl.'s SMF ¶ 29.a. EN 84.05 is extremely broad, referring to "any kind of gas," including "mixtures thereof," and using the term "e.g." or *exempli gratia*, which

signifies a non-exclusionary list of examples. Thus, the list of gases contained in the EN should be considered non-exclusionary. *See* Ex. C.14 to Pl.'s SMF. There is no dispute between the parties that the PC50 supermodule generates gas.[7] Defendants so admit in, among other places, their Reply brief, stating that "the PC50's constituent parts and systems contribute to the production of a hydrogen-rich syngas fuel in an operable Model 400…"). Defs.' Reply at 3 (ECF 56).

Therefore, the PC50 supermodule's generation of either a water gas or a syngas falls squarely into the EN's description of a machine for producing any kind of gas.

### 2. EN 84.05 Supports That HTS Heading 8405 Includes Generators Of Gas For Whatever The Intended Use

EN 84.05 also states that a gas generating machine is covered by Heading 8405, "*whatever the intended use* of the gas produced (lighting, industrial heating, feeding gas engines, welding or cutting metals, chemical synthesis, etc.)." *See* Ex. C.14 to Pl.'s SMF (emphasis added). Thus, Defendants' attempt to characterize the PC50 supermodule by its output, which is used to generate electricity and heat, should hold no weight. ECF 56 at 11. Rather, those purposes are squarely covered by the EN's non-exclusionary list of intended uses of the gas, and do not preclude the PC50 supermodule from being classified as a generator under Heading 8405.

### B. The PC50 Supermodule Is Not Required To Be Self-Contained For The Article To Fall Under HTS 8405

We note that EN 84.05 states that HTS heading 8405 covers "self-contained apparatus and plant…" However, the PC50 supermodule, whether or not a self-contained apparatus, is still properly classified under HTS 8405.

---

[7] In fact, as further discussed in Section I, *supra*, Defendants admitted that the SMR generates a water gas.

### 1.    HTS 8405 Is Not Limited To *Only* Self-Contained Apparatuses

EN 84.05 does not limit HTS 8405 to *only* self-contained apparatuses. If that were the intent, the EN would state that the heading covers *only* "self-contained apparatus and plant." *Compare* EN 84.05 *with* EN 84.12 (stating that "Rockets are classified in [heading 8412] **only** when forming propulsive units proper.") (emphasis added).

EN 84.05 does not include such limiting language because to so limit its coverage would contradict both the plain language of HTS Heading 8405 and the terms of the EN itself. HTS 8405 specifically covers "[p]roducer gas or water gas generators, *with or without their purifiers.*" (Emphasis added). The statutory text recognizes that certain generators within heading 8405 are not self-contained, since generators with purifiers are included within the heading by its terms. The ENs "cannot be used to narrow or amend or create ambiguity in the language of [a] [HTSUS] heading[.]" *Apple Inc. v. United States*, 964 F.3d 1087, 1096 (Fed. Cir. 2020) (internal quotation marks omitted); *see also Rubie's Costume Co. v. United States*, 337 F.3d 1350, 1359 (Fed. Cir. 2003) ("Although the examples in the Explanatory Notes are probative and sometimes illuminating, we shall not employ their limiting characteristics, to the extent there are any, to narrow the language of the classification heading itself."). Such a limitation would also vitiate the mandatory effect of GRI 2(a), which expands any reference to an article in a heading to include incomplete or unfinished articles having the "essential character" of that complete or finished article. *See* GRI 2(a).

Importantly, as Defendants admitted in response to HyAxiom's SMF, the National Import Specialist (NIS) initially responsible for evaluating the PC50 supermodule admitted that, based on the language of EN 84.05, "a generator presented without a purifier or auxiliary apparatuses may not necessarily be 'self-contained' yet still fall under HTS 8405." Pl.'s SMF ¶ 126; Defs.' Resp. to Pl.'s SMF ¶ 126 (ECF 49-1).

Additionally, as both parties here agree, HTS 8405 is an *eo nomine* heading, suggesting that the category of water gas generator is intended to be broad and to cover "all forms of the article." *See Nidec Corp. v. United States*, 68 F.3d 1333, 1336 (Fed. Cir. 1995); *see also* Pl.'s SMF ¶ 8; Defs.' Motion for Summary Judgment pp. 32-33 (ECF 49). Accordingly, given the potential contradiction between EN 84.05 and HTS 8405, EN 84.05 should not be read to imply that the heading covers *only* self-contained apparatuses.

### 2.    Even If EN 84.05 Is Limited To Only Self-Contained Apparatuses And The PC50 Supermodule Is Not Considered To Be Self-Contained, The EN Is Not Binding

Even assuming, *arguendo*, that EN 84.05 is limited to *only* self-contained apparatuses and plants, and that the PC50 supermodule is not self-contained, EN 84.05 is not binding. *See BenQ Am. Corp.*, 646 F.3d at 1376. Interpreting the EN to exclude the PC50 supermodule would be counter to the plain meaning of the HTS heading. Unlike the HTS headings, Section notes, and Chapter notes, the ENs are not legally binding. *Id*. Thus, the headings and Section and Chapter notes are paramount compared to the ENs.

Here, HTS 8405, which is statutory text, includes water gas generators with or without their purifiers. Thus, by its plain language, the heading includes both self-contained and non-self-contained apparatus. If an EN contravenes the plain meaning of a tariff provision, the heading takes precedence. *See Container Store*, 864 F.3d at 1331–32 (citing *Airflow Tech.*, 524 F.3d at 1293 ("[W]hen the language of the tariff provision is unambiguous and the Explanatory Notes contradictory, we do not afford [the Explanatory Notes] any weight."). If EN 84.05 is limited to cover only self-contained apparatuses and plants, then it would be considered an impermissible attempt to "narrow" HTS 8405. *See Apple Inc.* 964 F.3d at 1096 (Explanatory Note may not be interpreted to "narrow" the language of the classification heading itself). A non-self-contained water gas generator would thus nevertheless fall under HTS 8405 based on the plain language of

-13-

HTS 8405. Accordingly, if EN 84.05 is limited to only self-contained apparatuses, that portion of the EN should be accorded no weight in classifying the PC50 supermodule since it would impermissibly contradict and limit the language of HTS 8405.

<u>**CONCLUSION**</u>

For the reasons set forth above, Note 3 of Section XVI of the HTSUS and the Explanatory Note for HTS heading 84.05 support the classification of the subject PC50 supermodules under HTS Heading 8405. Accordingly, HyAxiom's Motion for Summary Judgment should be granted and Defendants' Cross-Motion for Summary Judgment should be denied.

Respectfully submitted,

<u>/s/ *Christopher M. Loveland*</u>
Christopher M. Loveland
SHEPPARD, MULLIN, RICHTER &
  HAMPTON LLP
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C. 20006-6801
Telephone: 202.747.1924
Facsimile: 202.747.3832
cloveland@sheppardmullin.com

Of Counsel:

J. Scott Maberry
Lisa C. Mays
Jonathan Wang
Dated: April 11, 2024    SHEPPARD MULLIN RICHTER
  & HAMPTON LLP

*Attorneys for HyAxiom, Inc.*

## **CERTIFICATE OF COMPLIANCE**

I, Christopher M. Loveland, counsel for Plaintiff, HyAxiom, Inc., certify that this brief complies with the word limitation stated in Rule (B)(1) of the Court of International Trade's Chamber Procedures. Specifically, this brief contains 4,242 words (excluding the parts exempted by the Chamber Procedures) as determined by the word count feature of the word processing program used to create this brief.

/s/ *Christopher M. Loveland*
Christopher M. Loveland

## **CERTIFICATE OF SERVICE**

I hereby certify that that on April 11, 2024, I caused the foregoing to be served via email and electronic filing upon the following counsel for the Defendants:

> Alexander J. Vanderweide
> Senior Trial Attorney
> Department of Justice, Civil Division
> Commercial Litigation Branch
> 26 Federal Plaza – Room 346
> New York, New York 10278
> alexander.vanderweide@usdoj.gov

/s/ *Christopher M. Loveland*
Christopher M. Loveland