UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. TIMOTHY C. STANCEU, JUDGE

|  |  |
|---|---|
| HYAXIOM, INC., F/K/A DOOSAN FUEL CELL AMERICA, INC., | : : : : |
| Plaintiff, | : : |
| v. | : Court No. 21-00057 |
| UNITED STATES OF AMERICA; U.S. CUSTOMS & BORDER PROTECTION; TROY A. MILLER, PERFORMING THE DUTIES OF THE COMMISSIONER, | : : NONCONFIDENTIAL : : : : |
| Defendants. | : : |

**MEMORANDUM IN SUPPORT OF PLAINTIFF HYAXIOM, INC'S RENEWED MOTION FOR SUMMARY JUDGMENT**

Christopher M. Loveland
SHEPPARD, MULLIN, RICHTER &
 HAMPTON LLP
2099 Pennsylvania Avenue, N.W., Suite 100
Washington, D.C. 20006-6801
Telephone: 202.747.1900
Facsimile: 202.747.1901
cloveland@sheppardmullin.com

Of Counsel:

J. Scott Maberry
Lisa C. Mays
Jonathan Wang
SHEPPARD MULLIN RICHTER
 & HAMPTON LLP

Dated: April 25, 2025          *Attorneys for HyAxiom, Inc.*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1

QUESTION PRESENTED ...................................................................................................2

ARGUMENT .........................................................................................................................2

I.     STANDARD OF REVIEW .......................................................................................2

II.    APPLICATION OF NOTE 3 TO SECTION XVI OF THE HTSUS ESTABLISHES 8405 AS THE CORRECT HEADING FOR CLASSIFICATION OF THE PC50 SUPERMODULE .............................................................................3

        A.     The PC50 Supermodule Is The Type Of Machine To Which Note 3 To Section XVI Applies, And Requires A Principal Function Analysis ......................3

        B.     Application Of Note 3 To Section XVI Requires Classification Of The PC50 Supermodule By Its "Principal Function" ........................................................3

                1.     The Undisputed Material Facts Establish That The Principal Function Of The PC50 Supermodule Is To Generate Gas ...........................5

                2.     The Principal Function Of The PC50 Supermodule Fits Squarely Within The Meaning Of Heading 8405 ........................................................8

                3.     All Components Of The PC50 Supermodule Perform Functions Complementary To The Generation Of Water Gas ....................................9

CONCLUSION ....................................................................................................................11

CERTIFICATE OF COMPLIANCE ..................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*
  477 U.S. 242 (1986)............................................................................................................2

*Bausch & Lomb, Inc. v. United States*
  148 F.3d 1363 (Fed. Cir. 1998)...........................................................................................2

*Belimo Automation A.G. v. United States*
  37 CIT 1645 (2013), aff'd 774 F.3d 1362 (Fed. Cir. 2014)......................................... *passim*

*Belimo Automation A.G. v. United States*
  774 F.3d 1362 (Fed. Cir. 2014).........................................................................................10

*Brookside Veneers, Ltd. v. United States*
  847 F.2d 786 (Fed. Cir. 1988).............................................................................................3

*Celotex Corp. v. Catrett*
  477 U.S. 317 (1986)............................................................................................................2

*Estee Lauder, Inc. v. United States*
  36 CIT 1, 815 F. Supp. 2d 1287 (2012) .............................................................................2

*HyAxiom, Inc. v. United States*
  726 F. Supp. 3d 1398 (CIT 2024) ...........................................................................1, 3, 8, 9

*Jarvis Clark Co. v. United States*
  733 F.2d 873 (Fed. Cir. 1984).............................................................................................2

*McKesson Canada Corp. v. United States*
  365 F. Supp. 3d 1310 (CIT 2019).............................................................................. *passim*

*Warner–Lambert Co. v. United States*
  407 F.3d 1207 (Fed. Cir. 2005)...........................................................................................2

*Wilton Indus., Inc. v. United States*
  31 CIT 863, 493 F. Supp. 2d 1294 (2007) .......................................................................12

**Statutes**

28 U.S.C......................................................................................................................................12

28 U.S.C. § 2643(a)(1)................................................................................................................12

28 U.S.C. § 2643(c)(1)........................................................................................................12

## HTSUS

HTS 8405 ............................................................................................................... *passim*

HTS 8405.10.00 ..................................................................................................................12

HTS 8503 ............................................................................................................................11

HTS 8503.00.95 ..................................................................................................................11

HTS Section XVI, Note 3 ....................................................................................................3

## Other Authorities

Merriam-Webster Online Dictionary, https://www.merriam-
 webster.com/dictionary/principal;
 http://www.merriamwebster.com/dictionary/function...............................................4

Merriam-Webster Online Dictionary, https://www.merriam-
 webster.com/dictionary/function;
 http://www.merriamwebster.com/dictionary/function...............................................4

## USCIT Rules

USCIT R. 56(a).....................................................................................................................2

**INTRODUCTION**

Pursuant to the Court's March 12, 2025 Order (ECF 70), Plaintiff HyAxiom, Inc. ("HyAxiom") respectfully submits this memorandum in support of its renewed motion for summary judgment. This memorandum addresses the sole remaining issue identified by the Court in connection with the parties' cross motions for summary judgment; namely, "whether the principal function of the PC50 is, or is not, the gas generation function performed by machines of heading 8405, HTSUS." *HyAxiom, Inc. v. United States*, 726 F. Supp. 3d 1398, 1413 (CIT 2024).

This case concerns HyAxiom's PC50 supermodule, a machine containing several components that perform distinct operations, but all of which work together to support the PC50 supermodule's ultimate purpose: generating a hydrogen-rich gas. As a machine comprised of several components with distinct but complementary functions, the PC50 supermodule is exactly the type of machine to which Note 3 to Section XVI, Harmonized Tariff Schedule of the United States ("HTS" or "HTUS"), applies. Note 3 instructs that such a machine be classified by its "principal function," and it is clear that, as imported, the PC50 supermodule's principal function is generating a hydrogen-rich gas. Moreover, the gas-generating function of the PC50 supermodule fits squarely within the meaning of heading 8405, HTSUS. Because there is no genuine dispute as to what the PC50 supermodule is or how it functions, this matter is appropriate for summary judgment.

As set forth in greater detail below, the undisputed material facts, which have been agreed to and jointly submitted by the parties, and applicable law fully support the classification of the PC50 supermodule under Heading 8405, HTSUS, and accordingly, summary judgment should be entered in favor of HyAxiom on Count I of its First Amended Complaint.

## QUESTION PRESENTED

Whether the principal function of the PC50 supermodule is the gas generation function performed by machines of Heading 8405, HTSUS?

## ARGUMENT

### I. STANDARD OF REVIEW

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." USCIT R. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In tariff classification cases, "summary judgment is appropriate when there is no genuine dispute of … what the merchandise is." *Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1365 (Fed. Cir. 1998). Where there are no material facts of genuine dispute surrounding what the merchandise is, classification of the merchandise is a question of law for the Court to decide *de novo*, such that a presumption of correctness does not apply to Custom and Border Protection's ("CBP") classification decision. *See Estee Lauder, Inc. v. United States*, 36 CIT 1, 4, 815 F. Supp. 2d 1287, 1292 (2012) ("Customs' statutory presumption of correctness is irrelevant with regard to classification decisions on summary judgment.").

The Court has "an independent responsibility to decide the legal issue of the proper meaning and scope of HTSUS terms." *Warner–Lambert Co. v. United States,* 407 F.3d 1207, 1209 (Fed. Cir. 2005). In other words, "the [C]ourt's duty is to find the *correct* result, by whatever procedure is best suited to the case at hand," independent of how CBP may have previously classified the article in question. *See Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984) (emphasis in original).

II.     **APPLICATION OF NOTE 3 TO SECTION XVI OF THE HTSUS ESTABLISHES 8405 AS THE CORRECT HEADING FOR CLASSIFICATION OF THE PC50 SUPERMODULE**

    A.     **The PC50 Supermodule Is The Type Of Machine To Which Note 3 To Section XVI Applies, And Requires A Principal Function Analysis**

Pursuant to Note 3 to Section XVI, HTSUS, machines designed to perform two or more complementary functions are classified based on their principal function. Specifically, Note 3 states that:

> Unless the context otherwise requires, composite machines consisting of two or more machines fitted together to form a whole and other machines designed for the purpose of performing two or more complementary or alternative functions are to be classified as if consisting only of that component or as being that machine which performs the principal function.

In this case, the Court has appropriately found that the PC50 supermodule is a machine designed for the purpose of performing two or more complementary or alternative functions. *HyAxiom,* 726 F. Supp. 3d at 1406. Additionally, no context requires any alternative treatment. Accordingly, as directed by Note 3, the PC50 supermodule should "be classified as if consisting only of that component or as being that machine which performs the principal function." *See* HTS Section XVI, Note 3.

    B.     **Application Of Note 3 To Section XVI Requires Classification Of The PC50 Supermodule By Its "Principal Function"**

Classification of an imported article under Note 3 to Section XVI is performed by reference to the "principal function" of the article. *See* HTS Section XVI, Note 3. The HTSUS, however, does not define the phrase "principal function." Accordingly, to assist in ascertaining the common meaning of a tariff term, the Court may rely upon its own understanding of the term and consult dictionaries, lexicons, scientific authorities and other reliable sources as an aid. *See Brookside Veneers, Ltd. v. United States*, 847 F.2d 786, 789 (Fed. Cir. 1988).

The common definition of the adjective "principal" is "most important, consequential, or influential." (Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/principal; http://www.merriamwebster.com/dictionary/principal).The term "function" is defined as "the action for which a person or thing is specially fitted or used or for which a thing exists." (Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/principal; http://www.merriamwebster.com/dictionary/function). Therefore, for the purposes of the Court's analysis, the "principal function" of an article is the most important, consequential, or influential action for which it is specially fitted or used, or for which the article exists.

Application of Note 3 requires a thorough analysis of the actual workings of the imported article. *See, e.g., Belimo Automation A.G. v. United States*, 37 CIT 1645, 1655-56 (2013), aff'd 774 F.3d 1362 (Fed. Cir. 2014); *McKesson Canada Corp. v. United States*, 365 F. Supp. 3d 1310, 1317-22 (CIT 2019). This Court generally analyzes the principal function of an article by: (1) identifying the principal function of the imported article as shown in discovery; (2) analyzing this function within the meaning of the proposed heading; and (3) considering the distinct functions of the components to determine whether they are complementary to a primary function. *See Belimo*, 37 CIT at 1655-57 (2013) (applying an identical analysis to classify an electric motor by its principal function after determining any distinct functions were complementary to the function of the motor); *McKesson*, 365 F. Supp. 3d at 1317-22 (identifying the principal function of the imported article as packaging, identifying the heading for this function, and determining all other operations are incidental to the principal function). As set forth below, the application of this analyses demonstrates that the principal function of the PC50 supermodule is to generate gas and that it should be classified under heading HTS 8405.

      **1.**      **The Undisputed Material Facts Establish That The Principal Function Of The PC50 Supermodule Is To Generate Gas**

The principal function (*i.e.*, the most important, consequential, or influential action) of the PC50 supermodule is the generation of a hydrogen-rich gas. The hydrogen-rich gas generated by the PC50 supermodule is used by other later-incorporated components to produce electricity. *See* Joint Statement of Material Facts, ECF 71, ("JSMF") ¶ 4. The electricity output of the finished product provides energy for other purposes, such as the operation of other machines. *See id.*

The PC50 supermodule operates by performing two chemical reactions on natural gas. *See* JSMF ¶¶ 10, 16. Those reactions generate a hydrogen-rich gas. *See id.* ¶¶ 10, 16-18. The PC 50 supermodule does not aid in the generation of electricity unless incorporated with the other components of the PureCell® Model 400 powerplant, such as the fuel stacks, the blowers, and the electrical system module. *See id.* ¶ 4. After incorporation of those components, which are not imported with the PC50 supermodule, the finished Model 400 powerplant uses the hydrogen-rich gas generated by the PC50 supermodule as fuel to generate direct current (DC) electricity. *See id.* ¶¶ 5, 22. Without the other components of the Model 400 powerplant, which, again, are imported separately and are not part of the PC50 supermodule, the PC50 supermodule is incapable of generating electricity. *See id.* ¶ 4.

The PC50 supermodule's gas generating function is conducted through chemical reactions performed by the article's fuel processing system (*i.e.*, the steam methane reformer ("SMR") and the integrated low shift reactor ("ILS")), and is supported by other components (*i.e.*, the thermal management system ("TMS"), water treatment system ("WTS"), air processing system ("APS"), and frame). *See* JSMF ¶ 2.

In brief outline, the natural gas enters the PC50 supermodule, where the ILS first purifies it by removing sulfur-based odorants. *See* JSMF ¶ 15. After it is purified, the methane enters the SMR. *See id.* ¶ 14. The SMR contains a ▮▮▮▮▮▮ burner to generate heat, which is required for the primary water gas reaction to occur, and tubes ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ to generate a new gaseous output. *See id.* ¶¶ 9-12. The gas output from the SMR then re-enters the ILS, where a water gas shift reaction occurs. *See id.* ¶ 16. The water gas shift reaction within the ILS removes carbon monoxide so that only small quantities remain, and increases the hydrogen yield of the SMR gas output resulting in a hydrogen-rich gas that can be used as fuel in the fuel cell stacks of the completed PureCell® Model 400 powerplant. *See id.* ¶¶ 16-22.

HyAxiom does not dispute that the PC50 supermodule performs multiple functions in addition to generating hydrogen-rich gas. For example, the WTS purifies and provides unadulterated water, the TMS manages the overall system temperature and transports the necessary steam, the APS ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and the frame houses all the components. *See id.* ¶¶ 2, 10, 15-18, 21, 23, 26, 28, 30-31, 34-36. In order for the PC50 supermodule to generate the hydrogen-rich gas, it requires the water purifying, temperature regulating, and air handling functions of these components; and requires a frame to house the components. Thus, the water purification, temperature regulating, air handling, and housing functions all support or complement the gas generation function of the PC50 supermodule, and it is the gas generation function of the PC50 supermodule that generates the fuel (*i.e.*, the hydrogen-rich gas) used in the fuel cells of the finished Model 400 powerplant. Accordingly, based on the how the PC50 supermodule operates, it is clear that the most important, consequential, and influential action for which the PC50 supermodule exists is the gas generation function.

This conclusion is supported by the Court's holding in *McKesson Canada Corp.*, 365 F. Supp. 3d. 1310. In that case, the government argued that a composite pill packing machine had several distinct functions instead of one principal function, or alternatively that the machine functioned to enable the company's ultimate goal of distributing pharmaceuticals. *Id*. at 1318. In response, the Court analyzed the machine itself, finding that "each allegedly distinct operation supports or is part of the [machine's] primary packaging function." *Id.* at 1321. Similarly here, the temperature regulation, steam transport, air handling, and housing functions of the PC50 supermodule support or are part of the gas generating function.

The fact that the PC50 supermodule will be further manufactured after importation into the finished PureCell® Model 400 powerplant (which does generate electricity) does not affect the principal function analysis of the PC50 supermodule. This Court faced the same issue when analyzing the principal function of an article ultimately intended for use in a larger system in *Belimo*, 37 CIT 1645 (2013). In that case, the Court held that the imported article (which was comprised of two distinct machines) was properly classified as an electric motor. *Id*. at 1655-56. The subject article in that case contained (in addition to the electric motor and gears) an integrated circuit board that made it ideal for use in HVAC systems. *Id*. at 1646-48. The Court focused its analysis not on the ultimate function of the finished article, but on the function of the imported article. *Id*. at 1651-57. The Court concluded that the imported article functioned as an electric motor upon importation, and should thus be classified as an electric motor. *Id*. at 1655-56. It further did not consider the imported article as a part of the HVAC system. *Id*. Similarly here, even though the imported article is destined for use in a powerplant, it generates gas for use as a fuel, and thus should be classified as a gas generator.

A principal function analysis is distinct from an examination of an imported article's principal purpose or use. *See McKesson*, 365 F. Supp. 3d at 1322 ("The government's argument that the principal purpose of the [machine] should govern the classification of the merchandise is similarly unavailing," finding that "the government conflates the aspirational goals of the users of the [machine] with purpose or use as a classification principle."). HyAxiom does not dispute that the ultimate goal of the PC50 supermodule is its use in the PureCell® Model 400 powerplant to generate electricity, but as in *McKesson*, the PC50 supermodule must be classified by its principal function, and not by the principal purpose. The principal function of the PC50 supermodule as imported is to produce a hydrogen-rich gas.

        2.        **The Principal Function Of The PC50 Supermodule Fits Squarely Within The Meaning Of Heading 8405**

In order for the PC50 supermodule to fall under heading 8405, its principal function must fit within the meaning of the heading. Heading 8405 applies to "[p]roducer gas or water gas generators, with or without their purifiers; acetylene gas generators and similar water process gas generators, with or without their purifiers; parts thereof." As set forth in the Explanatory Note ("EN") for HTS heading 84.05, the scope of the heading encompasses gas generators that generate any kind of gas, regardless of use:

> This heading covers self-contained apparatus and plant for generating *any kind of gas* (e.g., producer gas, water gas and mixtures thereof, acetylene) *whatever the intended use of the gas produced* (lighting, industrial heating, feeding gas engines, welding or cutting metals, chemical synthesis, etc.).

EN 84.05 (emphasis added).

The heading describes the exact principal function of the PC50 supermodule. As found by the Court, "[t]he gas generation processes of the PC50 involve the action of water upon other chemicals." - *i.e.*, a "water process." *HyAxiom,* 726 F. Supp. 3d at 1409-10. It is undisputed that

the SMR uses steam provided by the TMS and WTS to generate a gaseous output. *See* JSMF ¶¶ 26, 30. It is also undisputed that the ILS, through a water gas shift reaction, transforms the SMR's gaseous output into a hydrogen-rich gas. *See id* ¶¶ 16-21.

The Court has correctly determined that the "PC50 supermodule is designed and configured to generate two types of gases … that do not result in the exclusion of the PC50 from the scope heading 8405, HTSUS." *HyAxiom,* 726 F. Supp. 3d at 1411. It cannot be disputed that the ultimate function of the PC50 supermodule—namely, the generation of gas—aligns precisely with the description in heading 8405.

### 3. All Components Of The PC50 Supermodule Perform Functions Complementary To The Generation Of Hydrogen-Rich Gas

After determining that the principal function of the PC50 supermodule is the generation of a gas, the next step in the Note 3 analysis is to determine whether each component performs a complementary function to that action. HTS 8405 specifically contemplates a gas generator with purifying components, like the purifying components contained in the PC50 supermodule. EN 84.05 expressly states as follows:

> For certain uses, … producer or water gases must be cleaned of impurities such as dust, tars, sulphurous compounds, etc., and sometimes reheated or cooled. For this purpose, the generators are often fitted with purifiers … , coolers, dryers, reheaters, etc. Such purifiers and other auxiliary apparatus are classified with the generators when presented therewith, provided they are clearly suitable for use together.

EN 84.05(B) (emphasis omitted). Thus, when components performing purifying, temperature regulating, or other auxiliary functions are (1) presented with gas generating components, and (2) are clearly suitable for use together with those components, then the subject merchandise is clearly within the meaning of HTS 8405.

Here, the function of each of the components of the PC50 supermodule is complementary to the generation of the hydrogen-rich gas. The component machines contained in the PC50 supermodule include:

- the SMR, which generates a gaseous output after steam reforming the natural gas input;

- the ILS, which (1) purifies the natural gas input by removing sulfur compounds before the natural gas enters into the SMR and (2) generates a hydrogen-rich gas from the SMR's gas output through a water gas shift reaction;

- the TMS, which manages the system temperature ███████████████ ███████████████████████████████████████ and provides steam for gas reactions;

- the WTS, which purifies and provides the process water at the proper quality so that the FPS can generate a hydrogen-rich gas;

- the APS, which supplies process air to the FPS of the PC50 supermodule; and

- the frame of the PC50 supermodule, which provides a support structure for the supermodule components and unites all the components into a whole article upon import. *See* JSMF ¶¶ 2, 10, 15-18, 21, 23, 26, 28, 30-31, 34-36.

The Court in *McKesson*, in analyzing a machine similarly made up of multiple machines, determined that the additional functionalities of its components did not detract from the machine's principal function. The Court explained:

> The principal function, however, is performed by the packing machinery. The optical scanners, storage hoppers, electronic scales, dispensing slot, and ATDPS screen contribute functionalities arguably beyond that of a basic packing machine, including the holding of large amounts of medicine, continuous monitoring of inventory, minimization of packaging errors, and convenient means of retrieving packaged medication. These additional functionalities, if considered separately, are complementary to the principal function of packing, as they all relate to improving the speed, efficiency, and reliability of the packing operation. *See Belimo Automation A.G. v. United States*, 774 F.3d 1362, 1366 (Fed. Cir. 2014) (finding that a device connected to an actuator that measures the position of an air-conditioner's damper blades was an additional functionality, and did not change the classification of the actuator as an electric motor).

365 F. Supp. 3d at 1321.

Just as with the machines at issue in *Mckesson* and *Belimo*, the functions of each component of the PC50 supermodule are complementary to the generation of a hydrogen-rich gas, *i.e.*, by purifying water for use in generating a gas, purifying the gas, adjusting the temperature of the gas, or performing another related auxiliary function. *See, e.g.,* JSMF ¶¶ 15, 19, 28. Moreover, the purifying, air temperature regulation, and water temperature regulating functions of the component machines align perfectly with EN 84.05 as functions of component machines that are "purifiers and other auxiliary apparatus are classified with the generators," when presented with generators. EN 84.05(B). For these reasons, the principal function of the PC50 supermodule is the generation of a gas. Consequently, by operation of GRI 1, the tariff headings, and Note 3 to Section XVI, the PC50 supermodule is properly classified under HTS 8405 as a gas generator.

## CONCLUSION

For the foregoing reasons, the subject PC50 supermodules are properly classifiable under HTS 8405 and Defendants' classification of the PC50 supermodules under HTS 8503 is incorrect as a matter of law. Accordingly, HyAxiom's Motion for Summary Judgment should be granted and judgment should be entered in HyAxiom's favor on Count I of the FAC, as follows:

    A.    A declaration that the January 9, 2020 Notice of Action classifying the PC50 supermodules imported in Entry No. CWL-2016022-3 under HTS 8503.00.95, and the denial of HyAxiom's April 30, 2020 protest of the Notice of Action, are unlawful, null and void[1];

---

[1] *See* 28 U.S.C. § 2643(c)(1) ("[T]he Court of International Trade may … order any other form of relief that is appropriate in a civil action, including, but not limited to, declaratory judgments….").

-11-

B.  A declaration that the correct classification of the PC50 supermodules imported in Entry No. CWL-2016022-3 is HTS 8405.10.00;

C.  Reliquidation of Entry No. CWL-2016022-3 at the 0% tariff duty rate applicable to HTS 8405.10.00; and

D.  A refund in the amount of $5,789.19, representing the excess amount of duties paid in relation to Entry No. CWL-2016022-3, plus interest at the applicable rate, to be paid by Defendants to HyAxiom.[2]

Respectfully submitted,

/s/ *Christopher M. Loveland*
Christopher M. Loveland
SHEPPARD, MULLIN, RICHTER &
  HAMPTON LLP
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C. 20006-6801
Telephone: 202.747.1924
Facsimile: 202.747.3832
cloveland@sheppardmullin.com

Of Counsel:

J. Scott Maberry
Lisa C. Mays
Jonathan Wang

Dated: April 25, 2025

SHEPPARD MULLIN RICHTER
  & HAMPTON LLP

*Attorneys for HyAxiom, Inc.*

---

[2] *See* 28 U.S.C. § 2643(a)(1) ("The Court of International Trade may enter a money judgment … against the United States in any civil action commenced under [28 U.S.C.] section 1581…."); *see also, e.g.*, *Wilton Indus., Inc. v. United States*, 31 CIT 863, 921, 493 F. Supp. 2d 1294, 1345-46 (2007) (ordering reliquidation of imports under correct HTSUS headings and repayment of excess duties paid in partial grant of summary judgment in favor of importer).

## CERTIFICATE OF COMPLIANCE

    I, Christopher M. Loveland, counsel on behalf of Plaintiff HyAxiom, Inc., f/k/a Doosan Fuel Cell America, Inc., relying upon the word count feature of the Word processing program used to prepare the foregoing memorandum, certify that this memorandum complies with the word count limitation under the Court's Chambers Procedures, and contains 3,522 words.

                                            /s/ *Christopher M. Loveland*
                                            Christopher M. Loveland